Ted Lane SAMPLEY, Appellant,

v.

ATTORNEY GENERAL OF NORTH CAROLINA, Appellee.

No. 84–6397.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1985.

Decided March 10, 1986.

Bruce H. Jackson, Jr. (W.G. Smith, Wilmington, N.C., on brief), for appellant.

Barry S. McNeill, Asst. Atty. Gen. (Lacy H. Thornburg, Atty. Gen. of North Carolina, Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief), for appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Sampley appeals from the dismissal by the district court of his petition for habeas corpus in which he claimed that a state court's refusal to grant a continuance of his trial deprived him of his sixth amendment right to the effective assistance of counsel. We conclude that the district court properly determined that Sampley's sixth amendment right was not violated, and we therefore affirm.

I

In June 1981, Sampley had an altercation with several police officers in the New Hanover County, North Carolina, courthouse following dismissal of a criminal case in which Sampley was a prosecution witness. As a result, he was arrested and charged under state law with simple assault, assault on a police officer, and resisting arrest. Represented by privately-retained counsel, Sampley was tried on those charges in October 1981. The trial ended in a mistrial because of a hung jury.

The case was then calendared for retrial in November 1981, but upon the state's motion it was continued until December 1981, on the basis that Sampley's retained counsel was involved in a murder trial. The case was then again twice continued on the state's motion, first until January 1982, then until February 1982, on the basis that an essential witness for the state was unavailable for both the December and January terms.

Following the continuance to the February 1982 term, Sampley published a paid newspaper advertisement criticizing the state prosecutor for delaying his retrial. Sampley's retained counsel had specifically advised him not to do this while the retrial was pending.

As a result of Sampley's refusal to follow his advice, his counsel sought and was allowed by the court to withdraw as counsel in early February 1982.

In consequence of counsel's withdrawal, the state moved for yet another continuance of two weeks duration to mid-February, on the stated basis of Sampley's need "to hire new counsel." This was allowed. Once again, when the mid-February trial date approached, both Sampley and the state moved separately for yet another continuance, on the stated basis in both motions that Sampley did not yet have counsel. These motions were allowed in mid-February with trial being then set for March 1, 1982, some two weeks away.

On the morning of March 1, 1982, Sampley appeared in court without counsel. Upon being asked by the trial judge if he was represented, he answered that he was not. Responding to further inquiry, he advised the court that he had engaged an attorney "almost two weeks ago," but that the attorney could not represent him until after March 1, when, by an "odd occurrence" the attorney's public employment with a legal service office would end. No motion for continuance from the March 1, trial date had been made by either Sampley

or the new counsel until Sampley appeared in court on March 1.

Following Sampley's representation of the need for a continuance, the trial judge asked the state prosecutor if the state planned to try Sampley's case "this week." The prosecutor answered that he planned to try it as the first jury trial.

Thereupon the trial judge told Sampley that he saw nothing in the record to justify the requested continuance; that the case was set for trial; and that if Sampley wanted an attorney to represent him he should "get one quickly." To this Sampley responded that he would represent himself in view of the fact that counsel he had chosen was "unavailable right now." When the judge then suggested that there were "many, many more" attorneys in the county, Sampley asserted that because they considered his case to be "of a political nature" all the lawyers he had approached except the one he had employed wanted a higher fee than he could afford; that he had already spent "about seven thousand dollars on this."

Following reconfirmation by the prosecutor that he intended to call the case for trial at 2:00 p.m. that day, the trial judge told Sampley that it would be tried at that time, observing again that there were many lawyers near at hand who might represent him.

At 2:00 p.m., the attorney who Sampley said he had employed appeared "specially" with Sampley and moved for a continuance. He verified that Sampley had employed him earlier, that his freedom to engage in private practice had just commenced on March 1, that he was prepared to represent Sampley if given adequate time to prepare, but that he could not provide representation if the case were called for trial on March 1. The court denied counsel's motion, whereupon the case was called for trial and commenced with Sampley appearing *pro se*.

At the end of the day's proceedings, Sampley's putative counsel again appeared "specially" and formally renewed his motion for a continuance. The trial judge

again denied the motion, on the basis of findings of fact entered into the record. After reciting the basic chronology of proceedings above outlined the judge found that to grant a continuance would "create a hardship and inconvenience for the State of North Carolina" in view of the fact that the witnesses who were appearing for the state (and who had presumably made their arrangements for appearance) included another state trial court judge, a court reporter presently working in another county, a local magistrate, and the police officers who had observed Sampley's conduct on which the charges were based. The court further concluded that "the request for a continuance is ... untimely," and that "more than ample time has been afforded to this defendant (Sampley)."

The trial then proceeded with Sampley conducting his own defense throughout. He was found guilty by the jury on all three charges, and was given an active sentence of 60-days imprisonment and placed on probation for five years. At his sentencing hearing, which occurred at the end of the March 1 trial week, he was represented by privately retained counsel.

Following exhaustion of available state remedies, Sampley filed this petition for habeas corpus in federal district court, claiming a denial of his sixth amendment right to the assistance of counsel by virtue of the state court's refusal to grant a continuance of his trial. The district court summarily denied the petition on a consideration of the habeas record, including relevant portions of the state court criminal proceedings.

This appeal followed.

## II

The sixth amendment, while not providing an absolute right, guarantees a defendant a fair opportunity to secure counsel of his own choice to represent him at trial on criminal charges. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed.158 (1932). Among the ways this opportunity, hence the right, can be denied

is by a court's refusal to continue a scheduled trial when the defendant appears on the scheduled date without counsel, or is forced to trial with unprepared counsel or with counsel not of his choice. But the right, as indicated, is only a qualified one, the opportunity guaranteed is only a "fair" one.

■ Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, *see Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), or by objecting that counsel then retained or assigned is not presently "counsel of his choice," *see Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).[1] The limit of the right is necessarily found in the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time," *Morris v. Slappy*, 461 U.S. at 11, 103 S.Ct. at 1616.

■ When a defendant does request a continuance on the basis, as here, that he does not have counsel to represent him, the court requested to grant the continuance must therefore make a judgment whether this results from the lack of a fair opportunity to secure counsel or rather from the defendant's unjustifiable failure to avail himself of an opportunity fairly given. In making this judgment, the court is necessarily entitled to take into account the countervailing state interest in proceeding on schedule.

■ Given the inevitably fact-specific conflicts between individual rights and state interests posed by such requests for continuances, trial courts must be accorded wide discretion in deciding whether to grant continuances, notwithstanding that constitutional rights may be implicated. *Morris v. Slappy*, 461 U.S. at 11, 103 S.Ct. at 1616; *Ungar v. Sarafite*, 376 U.S. at 589, 84 S.Ct. at 849. Indeed, the constitutional right is probably best stated as a limit on trial court discretion: that discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. at 11–12, 103 S.Ct. at 1616–17 (quoting *Ungar v. Sarafite*, 376 U.S. at 589, 84 S.Ct. at 849). Because a request for delay cannot be considered "justifiable" if it proceeds from a "transparent ploy for delay," *Morris v. Slappy*, 461 U.S. at 13, 103 S.Ct. at 1617, whether it is the one or the other is the critical constitutional issue posed by such a request.

In application of these general principles, it is settled only that "not every denial of a request for more time … violates due process even if the [defendant] … is compelled to defend without counsel," *Ungar v. Sarafite*, 376 U.S. at 589, 84 S.Ct. at 849; though some such denials may, *see, e.g., Patton v. North Carolina*, 315 F.2d 643 (4th Cir.1963) (defendant forced to trial without counsel on day retained counsel allowed to withdraw).[2]

---

1. The due process clauses of the fifth and fourteenth amendments also provide independent protection against arbitrary refusals to continue cases (for whatever reasons) at the request of criminal defendants, *see Ungar v. Sarafite*, 376 U.S. 575, 588–89 & n. 9, 84 S.Ct. 841, 849 & n. 9. At the point where such a refusal implicates the right to effective assistance of counsel, the guarantees of the sixth and fifth amendments essentially converge, as necessarily do the constitutional inquiries forced by such a request and its denial. *See Morris v. Slappy*, 461 U.S. at 11–12, 103 S.Ct. at 1616–17 (in considering sixth amendment challenge to refusal of continuance, due process standard as applied in *Ungar* cited and applied).

2. In *Patton*, in the course of finding a sixth amendment violation where the refusal to continue compelled trial without counsel, a divided panel of this court held that "an effective waiver of counsel cannot be implied," and on that basis rejected the state's contention that the defendant's own conduct (discharging retained counsel on the day of trial) prevented finding a constitutional violation. *Patton*, 315 F.2d at 646.

### III

■ We apply these constitutional principles in review of a district court's summary dismissal of a habeas corpus petition challenging, collaterally, a state trial court's discretionary denial of such a request for continuance. Our review is therefore subject to the constraints imposed upon federal collateral review of state court criminal proceedings by 28 U.S.C. § 2254(d).

A preliminary question, therefore, is the extent to which the state court's ruling was based upon factual findings subject to the deference commanded for federal courts by § 2254(d), and to what extent it was based upon conclusions of law subject to plenary federal review. As *Miller v. Fenton,* — U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), has recently emphasized, there is no "rule or principle that will unerringly distinguish a factual finding from a legal conclusion" for purposes of applying § 2254(d).

Here the ultimate state court determination—the dispositive one under the constitutional principles above outlined—is that Sampley had been given a fair opportunity to secure counsel, so that the denial of continuance was warranted, given the countervailing state interest in proceeding with the duly calendared trial. While not of course put in those exact terms, the state court's formal findings that a continuance requested on the day of trial "would create a hardship and inconvenience for the State ... in that [its] witnesses [included] a Superior Court Judge ..., a Court Reporter ... a Magistrate ... [and] police offi-

cers," and that "more than ample time has been afforded to this defendant, prior to the call of this case for trial," are unmistakably to the effect that a fair opportunity to secure counsel—all that is guaranteed by the sixth amendment—had been provided.

Were we forced to decide the matter as dispositive of this appeal, our disposition would be to hold that this ultimate state court determination of "fair opportunity provided" is properly treated as a finding of fact, hence is subject to the deference commanded by § 2254(d), albeit it is effectively dispositive of the sixth amendment claim. *See Miller v. Fenton,* — U.S. at ——, 106 S.Ct. at 451 (citing *Dayton Board of Education v. Brinkman,* 443 U.S. 526, 534, 99 S.Ct. 2971, 2977, 61 L.Ed.2d 720 (1979)). Both as a matter of logical analysis and of proper allocation of judicial functions within the federal system, *see Miller v. Fenton,* — U.S. at ——, 106 S.Ct. at 451, this seems an issue which state trial judges must be considered better "positioned" to decide than are federal judges sitting in collateral review. That is to say, it seems on both scores more like the issue of juror impartiality, treated as one of fact in *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), than like the issue of voluntariness of a confession treated as one of mixed law and fact in *Miller v. Fenton.*

If this ultimate issue of "fair opportunity provided" be treated as one of fact, hence subject to the presumption of correctness under § 2254(d), the district court was

To the extent that the "no implied waiver" language of that opinion could be read to suggest that no conduct of a defendant short of an explicit, voluntary waiver of counsel is relevant in assessing his claim of sixth amendment violation, we think it cannot be so applied in light of later Supreme Court decisions analyzing the nature of the right, most directly, *Ungar v. Sarafite* and *Morris v. Slappy.* These decisions, as indicated in text, plainly reveal that dilatory conduct by a defendant is directly relevant to the question whether his right to a "fair opportunity" to secure counsel of his choice has been violated, and that this is the extent of the right. On the *Ungar/Morris* analysis, dilatoriness does not "impliedly waive" the "right to counsel," it

simply negates any claim that the habeas petitioner has not been afforded "a fair opportunity to secure counsel of his choice"—the limit of the sixth amendment right.

In any event, the *Patton* court was at pains to point out, *Patton,* 315 F.2d at 646, that it was "notable that the trial had never been delayed by Patton," suggesting that the decision was not intended to foreclose any inquiry into dilatoriness of a defendant in assessing sixth amendment claims.

*Cf. United States v. Curry,* 512 F.2d 1299, 1302 (4th Cir.1975) (in direct review, applying nonconstitutional abuse of discretion standard, dilatoriness of defendant held to preclude finding of abuse).

plainly correct in dismissing the habeas petition without an evidentiary hearing. There was no suggestion that any of the conditions for presuming correctness specified in § 2254(d)(1)–(7) were not present, and the ultimate determination by the state court was fairly supported on the record of state court proceedings, considered as a whole, that was before the district court, under § 2254(d)(8).

The basic subsidiary facts concerning the chronology of continuances at the behest of both the state and Sampley were undisputed. Critical in the chronology was the fact that two successive continuances following the withdrawal of Sampley's retained counsel had been allowed for the specific purpose of enabling him to employ other counsel. Also critical was the fact, conceded by Sampley, that between the time he employed new counsel until the case was called for trial at a date known by him for two weeks, neither Sampley nor newly employed counsel made any motion for further delay to accommodate the fact that new counsel could not act in private employment before the scheduled date of trial. This fact was not made known to the trial judge until the case was called. *See Ungar v. Sarafite*, 376 U.S. at 589, 84 S.Ct. at 849 (propriety of state court ruling must be gauged in light of the reasons presented at the time delay is requested). All told, the bald fact is that Sampley, who had represented throughout an intention and ability to employ his own counsel, had failed for almost a full month to secure counsel that would be able to represent him when his case was finally called.

Also indisputable on the state record is the fact that more than ordinary inconvenience to the state would result from the last-minute continuance belatedly requested, because of the various state judicial officers who under the peculiar circumstances were required and were standing by as state witnesses. Further reason for denying continuance was the long delay in bringing Sampley to retrial. Some of the delay was concededly responsive to state motions for its own convenience, but others

had been at the behest of Sampley and the state to accommodate Sampley's need to secure new counsel.

The only factual issue even potentially in dispute was whether Sampley had indeed been unable, despite reasonable effort, to secure new counsel able to represent him at the scheduled time. On this, Sampley's conclusory assertion that the "political" nature of his case made employment of counsel at affordable fees impossible was subject on its face to considerable doubt under the circumstances. Certainly the state trial judge's implicit rejection of this asserted justification for further delay is the type of credibility determination to which particular federal deference is owed under § 2254(d). *See Ungar v. Sarafite*, 376 U.S. at 591, 84 S.Ct. at 850 (deference owed state trial court's rejection of defendant's proffered reason for requested delay).

Because the line between "fact" and "law" and "mixtures of fact and law" for § 2254(d) purposes is concededly a queasy one, *see Miller v. Fenton*, —— U.S. at ——, 106 S.Ct. at 451 ("elusive"), we deem it prudent to say that were the ultimate state court determination here properly considered one of law or of mixed law and fact subject to plenary federal review, we would not decide this appeal differently. If the sixth amendment guarantee of a fair opportunity to secure counsel is properly considered a legal standard to be independently applied by federal courts, whether in direct or collateral review, we are satisfied that here such a standard is met on the undisputed facts of record in this habeas proceeding. As a matter of independent consideration of the facts as they necessarily appeared to the state judge at the time Sampley's case was called for trial, we cannot conclude that his denial of the requested delay was "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. at 11–12, 103 S.Ct. at 1616. Rather we would conclude independently, as presumably did

the district court,[3] that the state court's refusal to grant the continuance did not abuse the constitutional limits of trial court discretion [4] imposed by the sixth amendment.

AFFIRMED.

RICHARD L. WILLIAMS, District Judge, dissenting:

I respectfully dissent. The majority's opinion as an abstract statement of the law is correct but it ignores facts that make its specific application wrong in this case. The granting of a continuance lies within the trial judge's discretion. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). However, "discretion can be abused, and in an unusual case the denial of a continuance may be so arbitrary and so fundamentally unfair as to invoke the Constitution." *Shirley v. North Carolina*, 528 F.2d 819, 822 (4th Cir.1975).

This is just such a case. A review of the record shows that a glaring injustice has been done.

The record has already been well-summarized, but a few points deserve highlight. From the time Sampley was first tried in October 1981 until his original trial counsel withdrew in February 1982—a period of almost four months—the case was more or less ping-ponged on the court's docket, being continued rather routinely *at the State's request*. The following two continuances, after Sampley's counsel withdrew, were demanded as much by the State as by the defendant. Thus, up until March 1, 1982, the State either initiated or jointly participated in the trial's delay. Not until March 1 did Sampley alone seek a continuance, and at that time he informed the trial judge that he had retained counsel but that his counsel would not be available until the next day.[1] After perfunctory questioning,

---

**3.** Pointing to the critical facts, undisputed on the habeas record, that after his originally retained counsel withdrew from the case "petitioner had over a month in which to retain new counsel"; that the "state trial court granted motions on two occasions to allow petitioner an opportunity to retain counsel"; and that "petitioner did not request a further continuance until the case was called for trial at the scheduled time," the district court concluded, properly citing to *Ungar v. Sarafite*, that "[h]ad petitioner utilized reasonable dispatch his efforts to retain counsel would have been more successful," and that "[u]nder the circumstances of this case, petitioner's right to effective assistance of counsel of his choice and his right of due process were not violated." App. 78.

**4.** The constitutional limits on trial court discretion obviously run wider than might the nonconstitutional limits imposed in direct federal appeals. *See Gandy v. Alabama*, 569 F.2d 1318, 1328 (5th Cir.1978) ("abuse of constitutional dimension" applicable standard in collateral review).

**1.** The following colloquy occurred between the court, Mr. Carriker, the prosecutor, and Sampley:

MR. CARRIKER: Ted Sampley; would you step around?
COURT: Mr. Sampley, do you have an attorney? Just a moment; stand back there. You are not allowed to approach the Bench; I know you did not know. Do you have an attorney?
MR. SAMPLEY: No, Your Honor.
COURT: Why do you not have an attorney?

MR. SAMPLEY: The party that I talked to, is not available until after 1 March. He could not make himself available—it is Mr. Gillespie out of Legal Services, and he finishes up today. It is just an odd occurrence. I was scheduled to come to trial the same day that he—I talked to him almost two weeks ago.
COURT: May I see the file?
MR. CARRIKER: Yes, sir.
(District Attorney passes file to the Court.)
COURT: Has this case been tried before, Mr. District Attorney, and mistrialed?
MR. CARRIKER: Yes, Your Honor.
COURT: Did you have an attorney at that time?
MR. SAMPLEY: Yes, sir.
COURT: Was that October of last year? The 23rd day of October, 1981?
MR. SAMPLEY: Yes, sir.
COURT: Where is that attorney?
MR. SAMPLEY: Mr. Larrick.
MR. CARRIKER: He filed a Motion and appeared in Court in January. I think it was in January that he appeared in Court to withdraw at that time. The case was continued until two weeks ago and set for trial at that time.
COURT: Do you plan to try this case this week?
MR. CARRIKER: I planned to try it the first Jury Trial, Your Honor.
COURT: I see nothing in the file, Mr. Sampley, to indicate to the Court that the case for any reason, should be continued. The case is almost a year old at this time. It appears that you do not have an attorney. What his reason was for withdrawing I do not know. But the case is

the trial judge simply responded that the case was "almost a year old" and thus would proceed that afternoon as scheduled. Sampley was informed that if he wanted an attorney, "[t]here were many in the courthouse; there are lots of them in Wilmington and, I guess, throughout New Hanover County." Sampley proceeded *pro se* and was convicted.

While there may be circumstances that would justify a trial judge in forcing a defendant to trial the day before his counsel was available, such a determination would require evidentiary findings against the defendant: that he had in fact had a "fair opportunity to secure counsel of his choice" but had unduly delayed. The majority admits that these determinations are "inevitably fact-specific". Majority Opinion at 613.

If the trial judge had conducted such an evidentiary hearing, then I might be inclined, like the majority, to defer to the State's factual finding pursuant to 28 U.S.C. § 2254. But, in this case, the trial judge's findings were conclusory and have all the earmarks of a judicial gloss to cover the hazards of an appellate crucible.[2]

set for trial, and I would suggest, that if you want an attorney to represent you, that you get one quickly.

MR. SAMPLEY: In that case, Your Honor—may I speak?

COURT: Yes, sir.

MR. SAMPLEY: I will represent myself. I am neither feeble, ignorant or illiterate.

COURT: Do you understand that you have the right to have an attorney represent you in the trial of this case?

MR. SAMPLEY: The one that I have chosen, is unavailable right now.

COURT: There are many, many more in the County of New Hanover.

MR. SAMPLEY: May I speak, truthfully?

COURT: Well, it is according to what you are going to say.

MR. SAMPLEY: Okay. The attorneys that I approached, Your Honor, consider the case of a political nature, and the price they have put on it is much higher than I can afford. And the one that I have chosen, has—I have spent about seven thousand dollars on this—and the one I have chosen, I can handle it by paying it out of my business. So that is a problem.

COURT: I assume, from what you say, you plan to call this case at two o'clock?

MR. CARRIKER: That is what I had planned to do, Your Honor.

COURT: The case will be ready for trial at two o'clock. If you want to represent yourself, you may do so. If you want an attorney, there are many of them, here, in the courtroom, at the present time. There are many in the courthouse; there are lots of them in Wilmington and, I guess, throughout New Hanover County. The case will be tried at two o'clock.

2. After the case was continued until 2:05 p.m., the defendant's new counsel, Mr. Gillespie, specially appeared and moved for a continuance, which was denied. He apparently specially reappeared around 5:00 p.m. and renewed the motion. In denying his renewed motion, the court made these specific findings:

COURT: Let the record show that the Court denies the Motion of the attorney, Mr. Gillespie, for continuance and finds the following facts:

That on or about the 8th day of June, 1981, this defendant was charged with the three charges for which he stands on trial at this time; that the defendant had an attorney, who represented him at the District Court, in these three cases ... three cases and four charges; that the defendant had a different attorney that represented him in the Superior Court in the trial of this matter, and in October of 1981, that attorney in representing the defendant, saw a hung jury, which necessitated the declaring of a mistrial by the Judge then trying the case.

That the case has been set for trial since that date and continued, at the request of the defendant, on at least three occasions since the mistrial was declared; that no motion by the attorney, Mr. Gillespie, has been filed prior to this date, and that the attorney, Mr. Gillespie, did at 2 p.m. on this date, make an oral motion to the Court, that the case be continued; that the Court informed counsel that the matter was for trial and would be tried at 2 p.m.; that on this very morning the Court informed the defendant upon his oral motion for a continuance that for reasons set forth above, the matter would not be continued and would be tried at 2 p.m. this date.

That this case came on for trial at 2 p.m. on this date and is in the process of being tried, at this time. The Court further finds that it would create a hardship and inconvenience for the State of North Carolina, in that those persons who are witnesses for the State of North Carolina in these cases ... one being a Superior Court Judge, The Honorable Robert D. Rouse; one being a Court Reporter, this week holding Court in Pender County; another being the Honorable Jane Eason, who is a Magistrate here, in New Hanover County, the other being police officers involved in this case.

That the Court finds as a fact that it would be burdensome and unfair to the State of North Carolina to grant the continuance and, espe-

Thus, not only should his determination be afforded no deference, but his summary manner of proceeding should be viewed as even more conclusive evidence of his abuse of discretion.

The trial judge here made no effort to ascertain whether or not Sampley's explanation for failing to retain counsel was correct. Nor did the judge attempt to determine when Sampley and his newly retained counsel would be available and how much this delay would in fact harm the State. For all we know, Sampley's counsel might have been prepared to go to trial later that week and the witnesses subpoenaed by the State could have appeared then. The judge's suggestion that there were many attorneys available in the area for a trial that afternoon begs the issue, because it takes time to prepare where there are a number of witnesses, a prior trial transcript, and other similar issues to investigate.

In order to affirm the district court, one must gloss over all of these facts. Combined they form a picture of unseemly haste, a "myopic insistence upon expeditiousness," where the defendant is unnecessarily brought to trial in defiance of his constitutional right to counsel. *See Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). For these reasons, I would reverse the district court and remand the case to the district judge, with instructions to issue the writ directing the State of North Carolina to retry Sampley within 90 days or else dismiss the charges against him.

cially, to grant a continuance as filed by the defendant at five minutes past five, on this date, the case having begun shortly after 2 p.m. this date; the Court concludes as a matter of law that the request for a continuance is both untimely and, further, a detriment to the State of North Carolina if granted, and that more than

ample time has been afforded to this defendant, prior to the call of the case for trial, and, further, that this attorney has been practicing law, accepting private cases only since this day has begun, March 1, 1982.

It is, therefore, ORDERED that the Motion of James B. Gillespie, Jr., Esq., is hereby denied.