932 F.2d 975
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Jimmy Dale CURLISS, Petitioner-Appellant,
v.
Gary D. MAYNARD, Warden, Attorney General, State of
Oklahoma, Respondents-Appellees.
 No. 90-6317.
 United States Court of Appeals, Tenth Circuit.
 May 6, 1991.
 
 Before McKAY, SEYMOUR and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not assist the determination of this appeal. See Fed.R.App. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.
 
 
 2
 Petitioner Jimmy Dale Curliss appeals the denial of his habeas corpus petition by Chief Judge Ralph Thompson of the United States District Court for the Western District of Oklahoma. We affirm.[1]
 
 FACTS
 
 3
 In December 1982, petitioner Jimmy Dale Curliss was charged with robbery with a dangerous weapon in the District Court of Cleveland County, Oklahoma. Petitioner was originally represented by retained counsel, Mr. Michael Gassaway. Mr. Gassaway represented the petitioner at the preliminary hearing and filed numerous pretrial motions, including a Motion to Suppress, a Motion to Compel Discovery of Brady material, a Demurrer to the Information, and a Motion to Quash. Petitioner pled not guilty to the offense, and the trial was scheduled to begin on March 22, 1983. On that date, petitioner appeared and informed the court that he wished to discharge his retained counsel and that he wanted a continuance to be able to hire other counsel. There is no evidence in the record suggesting that the district court was advised why petitioner wished to discharge Mr. Gassaway or substantiating any complaint petitioner may have had against Mr. Gassaway. The trial court consented to the withdrawal of Mr. Gassaway on the express understanding that petitioner would retain new counsel for the trial and that the trial would be rescheduled for March 28, 1983. The court admonished petitioner that the trial, in any event, would be held on March 28, and that if petitioner failed to retain new counsel, that the court would appoint counsel at that time to represent petitioner. It was upon these terms that Mr. Gassaway was permitted to withdraw at the request of the petitioner.
 
 
 4
 On March 28, petitioner arrived for trial without counsel. He stated that he had attempted to contact several attorneys who declined to represent him on such short notice, but the only affidavit that he submitted to the court was an affidavit from one attorney, Fred Shaeffer, which indicated that he had first been contacted to represent the petitioner at 8:00 a.m. on the day of trial, March 28, for the trial that was scheduled to begin at 9:00 a.m. Mr. Shaeffer declined to accept the engagement by petitioner under those circumstances.
 
 
 5
 Petitioner then sought a second continuance of the trial, which request was made at the time the trial was scheduled to begin. True to its word, the trial court denied that request, and he appointed Mr. Reginald Gaston to represent petitioner. Mr. Gaston had previously been the First Assistant District Attorney, and the trial court concluded that he was "as competent [a] criminal practitioner as there is in Cleveland County." Although Mr. Gaston had only about 20 minutes to meet with the petitioner and learn of the case prior to the voir dire, the court recessed for several hours before taking evidence in order to allow Mr. Gaston the opportunity to review the transcript of the preliminary hearing and further to prepare. The court also recessed at 5:00 p.m. that day in order to allow Mr. Gaston the evening to prepare for the second day of trial. The court gave Mr. Gaston the opportunity to subpoena any additional witnesses that he wished for the defense.
 
 
 6
 Petitioner failed to appear for the second day of trial and he was ultimately apprehended as a fugitive in another state and brought back to Oklahoma for sentencing. The trial apparently continued for a part of the morning of the second day, after which the defendant was convicted. He ultimately received a 25-year sentence. The Oklahoma Court of Criminal Appeals (Judge Brett) affirmed the conviction upon direct appeal. Pursuant to 28 U.S.C. Sec. 2254, petitioner sought a writ of habeas corpus from the United States District Court for the Western District of Oklahoma. Petitioner asserted (1) that he was denied effective assistance of trial counsel, and (2) that the trial court abused its discretion by denying his second request for a continuance which was filed on the opening day of trial. The district court rejected both of petitioner's arguments and denied the habeas petition. Petitioner now appeals. We affirm.
 
 
 7
 PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
 
 
 8
 In Strickland v. Washington, 466 U.S. 668 (1983), the Supreme Court enunciated a two-prong test for determining the viability of a defendant's claim for ineffective assistance of counsel. The Court held that in order to prevail on such a claim, a defendant must show: (1) that his attorney's conduct fell outside the "wide range of reasonable professional assistance," id. at 689-90; and (2) that the attorney's deficiencies actually prejudiced defendant's trial. The district court below applied this test to petitioner's case and concluded that petitioner failed to meet either prong.
 
 
 9
 Based upon a careful review of the record, we cannot conclude that the district court erred in finding that petitioner's attorney's conduct did not fall outside the "wide range of reasonable professional assistance" required by the Sixth Amendment. Although Mr. Gaston was allowed only a very short period of time to prepare for trial, the Supreme Court has generally been disciplined to adopt a per se rule that incompetency of counsel can be presumed from the fact that counsel has had only a limited opportunity for preparation for trial. Instead, the Court has generally required that the attorney's actual trial performance be reviewed in order to determine whether the petitioner received effective assistance of counsel. When the evidence of the attorney's actual performance is available it seems preferable to rely on it rather than on a per se rule which ignores the realities of what actually happened at trial.
 
 
 10
 We start our analysis with United States v. Cronic, 466 U.S. 648 (1983). There, the Court reviewed defense counsel's performance and held that it was adequate under the Sixth Amendment even though the case was so complicated that the government had taken four and one-half years to prepare it and the appointed counsel was a young lawyer with a real estate practice who was allowed only 25 days of pretrial preparation. The Court refused to apply a per se assumption of incompetence based on the short preparation time, and it evaluated the actual performance of trial counsel. The Court said that unless the defendant could show "the complete denial of counsel " or that "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing", or other circumstances of similar magnitude, "there is generally no basis for finding a sixth amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." (emphasis added) Id. at p. 659, n. 26.[2]
 
 
 11
 The Court referred to only one case as an example of where the facts were so egregious that the ineffectiveness of counsel could be presumed. That case was Powell v. Alabama, 287 U.S. 45 (1932). The facts of that case, however, are very different from the facts of the case here. There, defendants were uneducated and illiterate black youths who, in the early 1930s, were charged with the capital offense of raping several white girls in the state of Alabama. All of the defendants were from out-of-state, and the alleged offense occurred while they were riding a freight train on its way through Alabama. The crime was highly publicized, and it was necessary to call out the militia to safeguard the defendants pending trial. The defendants were closely confined and kept under military guard until trial. At the time of the indictment, the court generally appointed "all the members of the bar" for the purpose of arraigning the defendants, although there is no indication that any lawyer in fact assisted the defendants. The trials began six days later. At the commencement of the trial, when the court asked if the defendants were ready to proceed, no lawyer appeared on their behalf. There was, in the courtroom, however a lawyer from Tennessee who said he had been sent to observe the trial by people who were interested in it. Notwithstanding his protestations of lack of familiarity with Alabama procedures or with the facts of the case, the court appointed him to represent the defendants with such local assistance as might be required from members of the local bar. The trial began immediately thereafter. The defendants were convicted and sentenced to death.
 
 
 12
 In holding that the defendants were not given effective assistance of counsel under these circumstances, the Court made it clear that it was applying a presumption of ineffective counsel only in the extreme circumstances of that particular case. The Court said,
 
 
 13
 "Whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that it is necessary now to decide, and we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeblemindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."
 
 
 14
 The other cases cited by the Court in Cronic were Avery v. Alabama, 308 U.S. 444 (1940); Chambers v. Maroney, 399 U.S. 42 (1970); and Morris v. Slappy, 461 U.S. 1 (1983). In each of those cases, as indeed was the case in Cronic itself, the Court looked to the actual performance of trial counsel to see if the defendant had received effective assistance of counsel, notwithstanding the lack of preparation time allowed to appointed counsel.
 
 
 15
 In Avery, counsel was appointed in a capital case with only three days to prepare prior to trial. The trial court denied the counsels' request for additional time, even though both counsel submitted affidavits that they had been tied up in other trials during those three days and therefore had essentially no preparation time prior to trial. The Supreme Court found that the defendant had not been deprived of effective counsel, noting the conclusion of the state court that counsel performed "intelligently and well." The fact-based analysis suggested by the Court was to determine whether the tardiness of the appointment in fact rendered such appointments "a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given assistance of counsel." Counsel's actual performance in that case was sufficient to satisfy the Court that the defendant had effective assistance of counsel.
 
 
 16
 In Morris v. Slappy, the Court reversed a court of appeals holding which had concluded that defendant had been denied effective assistance of counsel when counsel was appointed six days prior to trial on a charge of robbery, burglary, and rape. The defendant asserted that counsel had effectively been appointed only one and one-half days prior to trial and that counsel had been totally ineffective in communicating with him. The Court concluded that broad discretion must be granted to the trial courts concerning whether a continuance should be granted to allow appointed counsel more time to prepare, and, under the specific facts of the representation there involved, the Court found no abuse of discretion.
 
 
 17
 In Chambers v. Maroney, the defendant was represented by one legal aid lawyer during his first trial, which ended in a mistrial. Upon retrial, a second legal aid lawyer appeared to represent petitioner, and that lawyer did not consult with the defendant until just a few minutes before the second trial began. The defendant alleged that his second lawyer did not render competent legal assistance to him. The Supreme Court affirmed the court of appeals, which concluded that the second counsel provided adequate legal representation. In so ruling, the Supreme Court said, "[W]e are not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel ..." 399 U.S. 42 at 54.
 
 
 18
 Here, the record does not satisfy the petitioner's obligation to prove that his counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. 668, 687 (1983). In fact, the defendant was vigorously represented by counsel at every critical stage of the proceedings against him. His first counsel, Mr. Gassaway, represented him during the preliminary hearing and successfully got the initial charges dismissed for lack of jurisdiction. After the charges were refilled, he prepared and filed numerous pretrial motions that reflected thorough and competent pretrial representation of this defendant. His assistance continued up until the date that the initial trial was scheduled to begin and, had the trial court not approved the defendant's request to dismiss him, there is nothing in the record to establish that he would not have been fully prepared competently to try the case at that time.
 
 
 19
 Five days later, Mr. Gaston was appointed. Although his appointment came only twenty minutes before voir dire began, he had the advantage of being a very experienced and competent criminal attorney. As noted above, he had previously been a First Assistant District Attorney and the trial court had found he was "very well versed in the criminal law, and is as competent criminal practitioner as there is in Cleveland County." He had full access to the defendant, and the court gave a two-hour continuance after voir dire so that he could review the transcript of the preliminary hearing and otherwise prepare to cross-examine the state's witnesses. This time was apparently put to good use because his cross-examination was thorough, vigorous, and made use of the testimony at the preliminary hearing to attempt to impeach the state's witnesses. The court further recessed the trial at 5:00 p.m. on the first day in order to give the defendant's counsel the evening to attempt to secure any additional witnesses he may wish and to prepare for any further witnesses that would be called the second day. The court also apparently made available to the defendant's counsel the opportunity to subpoena additional witnesses, even on the short notice available to him.[3]
 
 
 20
 This was not a difficult case to try. The Information charged that the defendant and several accomplices had a quarrel with the victim at a bar following a failed drug transaction. They followed the victim out to the parking lot, where they assaulted him and beat him. The defendant approached the victim and stabbed him in the chest, and thereafter robbed him of his billfold. The assault was accomplished in the plain view of a number of witnesses and, at trial, testimony was adduced supporting these facts from the victim himself and from three eyewitnesses, all of whom identified the defendant and among them there was testimony unequivocally supporting all the essential allegations of the Information. The defense consisted of attacking the credibility and the accuracy of the state's witnesses, recalling the victim and calling two contrary witnesses (one of whom asserted her Fifth Amendment right not to testify) to challenge the government's story in various particulars. This assault presented the kind of simple and public factual scenario that an experienced defense lawyer could handle with a minimum of preparation. It did not involve an analysis of complex documents, or the understanding of protracted, secret, or complicated transactions. The entire trial only took two half-days to present the evidence. Defendant's counsel, in fact, vigorously cross-examined each of the state's witnesses and presented the defendant and two other witnesses of his own. His examination, both on cross-examination and direct examination, showed a full understanding of the facts and an artful application of defense counsel's skills. He gave an impassioned and thorough closing argument. However, in light of the overwhelming evidence of the defendant's guilt, it is not surprising that the jury found the defendant guilty.
 
 
 21
 The district court, in denying the defendant's motion for habeas corpus, concluded:
 
 
 22
 "The attorney made numerous objections and vigorously cross-examined all of the state's witnesses, filed numerous motions to the court, offered witnesses on behalf of the defense, and presented effective opening and closing arguments. Given the position that the petitioner had placed his attorney in, his performance appeared to be nothing less than Herculean."
 
 
 23
 The record fully supports these findings that the petitioner had effective legal counsel during his trial, notwithstanding the difficulties caused by his failure to secure other counsel prior to the trial which resulted in the last-minute appointment of Mr. Gaston to represent him.
 
 
 24
 The petitioner has failed to establish the second prong of Strickland as well: that the attorney's deficiencies actually prejudiced his trial. The defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Andrews, 790 F.2d 803, 814 (10th Cir.1986), cert. denied 481 U.S. 1018 (1987). There is a "strong presumption" that counsel did provide effective assistance of counsel and it is the petitioner's burden of proof to overcome that presumption. United States v. Voigt, 877 F.2d 1465, 1468 (10th Cir.1989), cert. denied 110 S.Ct. 517 (1989). Here, there is absolutely nothing in the record to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694. As noted previously, the state presented testimony from the victim himself and from three other objective and unrelated eye-witnesses who unequivocally established the elements of the offense charged against the defendant. The defendant admitted being present at the scene of the altercation, and denied the stabbing of the victim and taking his wallet. The jury obviously believed the far more credible and persuasive evidence put on by the state.
 
 
 25
 The only specific claim of prejudice asserted by the defendant was his assertion that there were several other witnesses that he could have called if his counsel had had more time to prepare for trial. However, his first counsel, Mr. Gassaway, had plenty of time to subpoena any additional witnesses if he had concluded that they would have been helpful to the defendant's case. Further, his second counsel, Mr. Gaston, was accorded the opportunity to secure witnesses in the middle of trial if any helpful witnesses existed and could be identified. When defendant filed his Motion for Judgment of Not Guilty Notwithstanding the Verdict, or Alternatively, Motion for New Trial, he identified only three other potential witnesses he claimed might have been helpful to him if they could have been secured by subpoena. Those witnesses were Rory Johnson, James Smith, and Linda Curliss. He attached affidavits from each of those potential witnesses to the motion. R. 110-112. Although the affidavits indicated that those prospective witnesses would have quarrelled with certain particulars of the government's case, none of those affidavits asserted that the affiant would have testified that the defendant did not stab the victim or take his wallet. Nor was there any indication that any of those witnesses would have been available to testify at trial if it had been continued.
 
 
 26
 Given the overwhelming strength of the government's case against the defendant and the defendant's inability to point to specific prejudice that would likely have lead to a different result, we cannot conclude that the federal district court was in error when it concluded that "a review of the affidavits submitted by petitioner's witnesses does not convince the court that there is a reasonable probability that the result of the trial would have been different, even if those witnesses testified at trial. Thus, the petitioner also failed to demonstrate the prejudice prong of the Strickland standard."
 
 
 27
 Finally, we note that 28 U.S.C. Sec. 2254(d) requires us to give a presumption of correctness to any determination of a factual issue made by a state court in a proceeding to which the defendant was a party. Among the factual findings made by the state trial and appellate courts in petitioner's case are findings that (1) there were not, in fact, any witnesses helpful to the defendant that he was unable to secure; (2) that the defendant's intent in discharging counsel and appearing at trial without counsel was for the purpose of postponing the trial and was done in bad faith; (3) that the evidence introduced against the defendant at trial was overwhelming; and (4) that defendant's trial counsel was highly competent in his training and reputation. To the extent that these conclusions involved factual findings, they must be given presumptive weight of correctness.
 
 
 28
 In denying the defendant's Motion for Judgment of Not Guilty Notwithstanding the Verdict, or Alternatively, Motion for New Trial, the state district court that tried the defendant made the following findings:
 
 
 29
 The Court is of the opinion that Mr. Curliss brought this delay and lack of counsel upon himself. He was advised that--Mr. Gassaway was advised, whenever Mr. Gassaway was allowed to withdraw, that there would be no delay in this trial; and yet Mr. Curliss insisted upon discharging Mr. Gassaway, with assurance to the Court that he was going to have counsel ready and prepared to try this case. The day for trial came up, and Mr. Curliss reported to this Court that he did not have any counsel; the Court appointed counsel, and Mr. Gaston was given every opportunity to secure the witnesses. It's the Court's finding that there were no witnesses to corroborate Mr. Curliss's story; that Mr. Curliss intended to delay this trial in hopes of the State's case falling apart, as evidenced by the fact that during the trial Mr. Curliss left this jurisdiction and was subsequently arrested and taken into custody and returned from the State of Nevada. If Mr. Curliss has difficulty with counsel, it's Mr. Curliss' [sic] own doing.
 
 
 30
 When the case was appealed to the Court of Criminal Appeals for the State of Oklahoma, Judge Brett concluded:
 
 
 31
 The victim, David Carter, and three eye-witnesses rendered one version of the offense, whereas appellant told a different version. The jury believed the victim and the three eye-witnesses and convicted appellant. The victim and the witnesses identified appellant as the person who plunged a buck knife or hunting knife into David Carter's chest while he lay on the ground in a semi-conscious condition after having been beaten by appellant and his companion. While on the ground, appellant removed Carter's billfold from his rear pocket and departed with his three companions in an Orange Volkswagon Rabbit automobile.
 
 
 32
 .............................................................
 
 
 33
 ...................
 
 
 34
 * * *
 
 
 35
 ... On the day of trial appellant appeared without counsel having been informed five days prior thereto that the trial would proceed on March 28, 1983. The trial had been earlier set for March 22, when appellant appeared with his retained counsel Mr. Michael Gassaway and informed the court that he was firing his attorney. At that time, the court informed appellant he must have retained counsel or one would be appointed to represent him. The court record reflects that Mr. Gassaway was allowed to withdraw as counsel because the appellant fired him. On the day set for trial, appellant was late and appeared without counsel. At that point the court appointed Mr. Reginald Gaston to represent him. The newly appointed counsel moved for a continuance, which was denied. Mr. Gaston was allowed until the afternoon to read the preliminary hearing transcript and to consult appellant. On the afternoon of March 28, 1983, the trial commenced.
 
 
 36
 ... The court specifically informed appellant he was to appear for trial with counsel. Appellant assured the court he would get an attorney. On the date set for trial, appellant appeared without counsel.
 
 
 37
 .............................................................
 
 
 38
 ...................
 
 
 39
 * * *
 
 
 40
 ... We therefore hold in this case that appellant ran the risk of being without counsel with full knowledge of what he was doing. His lack of good faith seems to be borne out by his failure to appear on the second day of trial, when the court issued a bench warrant for his arrest....
 
 
 41
 In his second assignment of error appellant asserts that he was denied effective assistance of counsel and was thereby denied his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution. A very careful reading of the transcript of testimony and the original record before this Court refutes appellant's contention. We have examined this claim in light of the standard announced by the United States Supreme Court in Strickland v. Washington, --- U.S. ----, 104 S.Ct. 2052 (1984), and find this claim to be without merit. In view of the testimony of three eye-witnesses, who had never met the victim until the night of this offense, there was little appellant could do to overcome their testimony. It is irrelevant whether or not appellant's companions were attempting to recover cocaine purchase money, as testified to by the appellant; the jury was bound to believe the eye-witnesses who testified and identified appellant as the person who inserted the knife into the chest of the victim and escaped with the victim's wallet.
 
 
 42
 While it would have been far preferable if the trial court had granted a further continuance on March 28 to give petitioner time to employ other counsel or to give Mr. Gaston further time to prepare, we cannot say that petitioner has carried his burden of proving that he was unconstitutionally deprived of the effective assistance of counsel as those standards have been set forth in Strickland v. Washington. More than eight years have elapsed since the trial in this case, and the prejudice to the state, to the victim, and to society at large in requiring a retrial at this late date are not costs that we should lightly impose. Morris v. Slappy, 461 U.S. 1, 14. If the defendant's constitutional rights were violated, of course, these costs would have to be paid. However, here we have found no such violations, and accordingly we affirm the district court's denial of the defendant's petition for habeas corpus on a ground of alleged ineffective assistance of counsel.
 
 
 43
 TRIAL COURT'S REFUSAL TO GRANT A SECOND CONTINUANCE OF THE TRIAL
 
 
 44
 The matter of whether to continue a trial date "is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). See also, Avery v. Alabama, 308 U.S. 444, 446 (1940). Moreover, when a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but "it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." Case v. Mondragon, 887 F.2d 1388, 1396 (10th Cir.1989), cert. denied 110 S.Ct. 1490 (1990). "Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial." Samply v. Attorney General of North Carolina, 786 F.2d 610, 613 (4th Cir.1986). The limit of the right to a continuance is "necessarily found in the contravailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors, at the same place at the same time.' " Samply v. Attorney General of North Carolina, Id. at 613.
 
 
 45
 Once again, the Supreme Court has counseled us to apply no per se rules, but rather to look at the facts of each case. Ungar v. Sarafite, 376 U.S. 575, 589. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." The case for a continuance in Ungar was much more compelling than petitioner's case here. There, the defendant was charged on December 8 with contempt. His trial was set for five days later, on December 13. At the beginning of trial, his counsel withdrew, claiming he had inadequate time to prepare a defense. The defendant then requested a continuance so that he could have time to obtain new counsel or to prepare adequately to defend the case himself. The trial court denied the continuance. The defendant proceeded to defend himself pro se, and he was convicted. Although the defendant argued that the denial of the continuance resulted in depriving him of due process, the Supreme Court disagreed. It looked at the specific circumstances of his case, and concluded that he was able adequately to defend himself pro se, and that there was no constitutional violation because of the denial of the continuance.
 
 
 46
 Here, it is not necessary to repeat all of the facts cited in the preceding section in order to conclude that the denial of petitioner's second request for a continuance did not violate his due process rights. We recite only some of the more salient facts. First, this was the second continuance sought by the petitioner. He previously had been granted a five-day continuance when he desired to fire his first counsel. Second, petitioner was unequivocally told that no further continuances would be granted after the first one, and he consented to proceeding with trial on March 28 as a condition to being able to discharge his first counsel. Third, his second motion for a continuance was not made until the trial was scheduled to begin. Thus, neither the court nor the state was given an adequate opportunity to plan for a second continuance. Fourth, defendant made only a weak showing of any effort to secure counsel during the intervening five days between the first trial setting and the second one. The only evidence on the record was the affidavit of one attorney which showed that he was not contacted by petitioner until one hour before the scheduled commencement of the second trial date. Fifth, there is adequate evidence in the record to support the state court finding that defendant had not sought alternative counsel in good faith and that his further request for a continuance was a sham designed to secure a strategic advantage. Sixth, the trial court was solicitous of the need for new trial counsel to prepare, consistent with the court's insistence upon keeping the March 28th trial date. The trial court granted a two-hour continuance before witnesses were called, and allowed defense counsel overnight before being required to rest the defense' case. He also indicated that he would permit the late securing of witnesses. Seventh, there was no showing of prejudice to the defendant because of the court's refusal to grant the second continuance. His trial counsel performed in an effective and thoroughly competent fashion. The defendant presented no credible evidence to suggest that the outcome of the trial would have been any different had a further continuance been granted.
 
 
 47
 Thus, we affirm the federal district court's conclusion that the petitioner was not denied due process by the failure to grant his second motion for trial continuance.
 
 
 48
 For the reasons stated above, we AFFIRM the district court's denial of the defendant's petition for writ of habeas corpus.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We grant petitioner's application for a certificate of probable cause and his motion for leave to proceed in forma pauperis
 
 
 [2]
 As will be discussed later in this Order, it could not by any stretch of the imagination be argued here that petitioner had a "complete denial of counsel" or that his counsel "entirely failed to subject the prosecutor's case to meaningful adversarial testing" or circumstances of similar magnitude, which must mean essentially the total failure of counsel
 
 
 [3]
 The petitioner argues that trial subpoenas must be served ten days in advance of trial in Oklahoma, but the record suggests that the court was prepared to allow witnesses to be compelled for next day testimony. In any event, there is no evidence that subpoenas were served and were declared ineffective or challenged because of such a ten-day rule