27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Lynn WALLACE, Defendant-Appellant.
 No. 93-5760.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 11, 1994.
Decided: June 23, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., Chief District Judge. (CR-92-278-D)
 Jack William Floyd, William Carlton Ingram, Jr., Floyd, Allen & Jacobs, Greensboro, North Carolina, for Appellant.
 Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Benjamin H. White, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Gary Lynn Wallace ("Wallace") was charged in an eight count indictment with conspiracy to misapply bank funds and with the substantive counts of misapplication, or aiding and abetting in the misapplication, of bank funds in violation of 18 U.S.C. Secs. 371 and 656, respectively. Wallace was tried on February 18, 1992 and convicted on all counts. He was represented at trial by one of two attorneys retained by him prior to his indictment. His other attorney was involved in a state court proceeding that day and could not be present.
 
 
 2
 Wallace brings this appeal, claiming that the district court's refusal to grant him a continuance in order for his second attorney to be present at his trial resulted in the violation of his Sixth Amendment right to counsel of his choice. Because we find that the district court did not abuse its discretion in refusing to grant Wallace the continuance, we affirm his conviction.
 
 I.
 
 3
 Wallace, a real estate developer in Durham, North Carolina, was indicted on November 30, 1992 and charged in count one with violating 18 U.S.C. Sec. 371 by conspiring with his codefendant, Thurman Edward Dortch, to misapply funds of NationsBank in violation of 18 U.S.C. Sec. 656. Wallace and Dortch were also charged in counts two through seven with violating 18 U.S.C. Sec. 656 by making separate fraudulent loans and converting the proceeds to Wallace's use and benefit.
 
 
 4
 Earlier in 1992, when an FBI agent and bank officials first approached Wallace concerning the charges in this case, Wallace retained Jack Floyd ("Floyd") to represent him in the matter. In his appellate brief, Wallace maintains that Floyd requested one of his partners, William Ingram ("Ingram"), to assist him, but that "[f]rom the outset it was the intention of [Wallace], and the understanding of Mr. Floyd and Mr. Ingram, that Mr. Floyd would serve as primary lead counsel throughout the trial of this criminal case, to be assisted by Mr. Ingram."
 
 
 5
 On December 2, 1992 Wallace appeared in district court with Ingram for the setting of his conditions of pretrial release. On December 7, 1992 Wallace appeared with Ingram for arraignment. At the arraignment, Wallace's trial tentatively was scheduled for January 11, 1993. On December 17, 1992 Wallace moved to continue his trial, claiming that his lawyers, Ingram and Floyd, were already committed to try a case in Guilford County district court on January 25, 1993 and would be unavailable for the January criminal term in federal court. The district court granted Wallace's motion on January 15, 1993 and Wallace's trial was continued until February 8, 1993.
 
 
 6
 On February 3, 1993 Wallace filed a second motion to continue his trial until after February 16, 1993 because of trial conflicts of counsel and the need for additional preparation time. In its opposition to Wallace's second request for a continuance, the government stated that due to a problem with interlocking confessions and also by the nature of the alleged conspiracy, it would prefer that Dortch be tried alone on February 16, 1993 and that Wallace be tried later during the February term.
 
 
 7
 On February 9, 1993 the district court conducted a hearing on the motion to continue and other pending motions. Ingram, appearing on behalf of Wallace, advised the court that a continuance would be unnecessary if Wallace were to be tried after March 1. The district court pointed out that it already had a multi-defendant trial scheduled for March 1 that would last a week and another matter that would occupy the week of March 15. The district court stated:
 
 
 8
 This initial appearance was in early December. The case has been continued from the January term, and I am not likely to continue it again.... I am not going to continue the case simply because they don't have time to comply.
 
 
 9
 ...
 
 
 10
 What I way [sic] saying to you and said at the outset, I am not going to continue the case for another judge, and I am not going to continue it beyond the 16th of February if that means that the Court will not be able to dispose of some other criminal case on the 16th of February. I don't care if it is Mr. Dortch's case on the 16th of February, or whether it's one of these other cases that I have not set, assuming the U.S. Attorney's conflicts and other scheduling matters don't result in any delay of the other cases on the February calendar.
 
 
 11
 The government advised Ingram shortly after the February 9, 1993 hearing that in the event Dortch's trial did not go forward on February 16th, Wallace would be tried on that date instead.
 
 
 12
 Indeed, Dortch's trial did not begin on February 16, and on February 17, Ingram received a telephone call from the Clerk indicating that Wallace should be in court at 2:00 p.m. that day for jury selection. That afternoon, a discussion took place off the record concerning the order of the trials of Dortch and Wallace, during which Ingram informed the court that Floyd had a trial conflict and would be unavailable until at least February 22, 1993. Despite Floyd's unavailability, the district court ordered Ingram to appear for jury selection that afternoon, with Wallace's trial to begin the following morning.
 
 
 13
 On the morning of February 18th, the district court judge made the following statement for the record:
 
 
 14
 I'm going to point out on the record, too, that this case had been set for the week of the 8th, that you [Ingram] had appeared and signed all of the pleadings in this case, appeared for all of the motions, and on February 3rd, you filed a motion for continuance of trial based on your conflicts and your other obligations in this court, to continue the matter beyond February 16th, not to call it before February 16th. And the case was not called before February 16th; it was called on February the 17th. So you and Mr. Floyd are asking us to set something that suits not only his schedule, but your schedule, and both of your schedules together. And the motion is denied, I think for ample reason.
 
 
 15
 Furthermore, the court noted that Ingram "never mentioned any problem with Mr. Floyd or that he had to be here for the case." In response to Ingram's objections to beginning without Floyd, the court stated:
 
 
 16
 Well, I hope he will join us sometime, whenever he can, but I am sure you are fully capable of representing Mr. Wallace.
 
 
 17
 The trial concluded on February 23, 1993 with the jury returning verdicts of guilty on each of the seven counts against Wallace. Wallace appeared for sentencing on July 26, 1993 and received a term of imprisonment of 53 months (concurrent on all counts), restitution in the amount of $1.7 million dollars jointly and severally with codefendant Dortch, and a special assessment of $50.00 for each of the seven counts on which he was convicted. A judgment incorporating that sentence was filed on September 14, 1993 and an amended judgment was filed on September 27, 1993.
 
 
 18
 Wallace filed a timely notice of appeal on September 15, 1993 and reported for service of his 53-month term of imprisonment on November 1, 1993, which term he is currently serving at the federal prison camp at Butner, North Carolina.
 
 II.
 
 19
 The Sixth Amendment guarantees a defendant a fair opportunity to secure counsel of his own choice to represent him at trial on criminal matters. Powell v. Alabama, 287 U.S. 45, 53 (1932). In recognition of the importance of a defendant's relationship with his attorney, appellate courts have found constitutional violations when a trial court has denied a continuance that was sought so that an attorney retained by the defendant could represent him at trial.[1] However, the right to counsel of choice is not absolute. Gandy, at 1323. "[T]he right ... is only a qualified one, the opportunity guaranteed is only a 'fair' one." Sampley v. Attorney General of North Carolina, 786 F.2d 610, 612-13 (4th Cir.1986), cert. denied, 478 U.S. 1008 (1986).
 
 
 20
 Wallace places particular reliance on the case of United States v. Rankin, 779 F.2d 956 (3d Cir.1986), to support his Sixth Amendment claim. In Rankin, the defendant's counsel of choice was unavailable for trial because of his involvement in state court trial proceedings. The court denied the defendant's request for a continuance and instead appointed counsel to represent the defendant one month before his trial. Finding that "interfering with a defendant's efforts to secure counsel and thereby forcing on him representation by an undesired court-appointed attorney may amount to a denial of a constitutional right," the Third Circuit reversed the defendant's conviction. Id. at 958.
 
 
 21
 The case at hand, however, is clearly distinguishable from Rankin, where the defendant's chosen counsel was replaced with an undesired court appointed counsel. In the instant case, Ingram and Floyd were both attorneys of record for Wallace. Moreover, Ingram had signed all of the pleadings for Wallace and argued all of the motions, including his various motions for a continuance. It follows that the district court judge had every reason to believe that Ingram was sufficiently experienced in the case and that he was perfectly qualified to represent Wallace at trial.
 
 
 22
 As this court recognized in Sampley,
 
 
 23
 [o]bviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, see Ungar v. Sarafite, 376 U.S. 575 (1964), or by objecting that counsel then retained or assigned is not presently "counsel of his choice," see Morris v. Slappy, 461 U.S. 1 (1983). The limit of the right is necessarily found in the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions in an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time," Morris v. Slappy, 461 U.S. at 11.
 
 
 24
 786 F.2d at 613 (emphasis added). Clearly, Wallace had no constitutionally protected right to have his case continued solely on the basis of his objection that Ingram, one of his two counsel of record, was not presently "counsel of his choice."
 
 
 25
 Furthermore, in determining if a continuance should be granted, a court should consider: the efficient administration of justice; the accused's rights, including an adequate opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance. United States v. Kikumura, 947 F.2d 72, 78 (3d Cir.1991). "Thus a court, considering all of the facts of a particular case, may refuse to grant continuance even if to do so results in the deprivation of defendant's chosen counsel." Id. The record shows that Wallace was given notice that he would be tried as early as January 15, 1993 when his first continuance was granted, and that he was advised after February 9, 1993 that his case would be called on February 16 if Dortch's trial did not commence on that date. He had already been granted one continuance on the basis of scheduling conflicts.[2] Given these facts, and balancing the district court's interest in managing its own calendar so as not to prejudice the rights of other defendants whose trials might be delayed by the granting of unnecessary continuances, we conclude that the district court did not abuse its discretion in refusing to grant Wallace a second continuance, and we affirm Wallace's conviction.
 
 AFFIRMED
 
 
 [1]
 In Releford v. United States, 288 F.2d 298 (9th Cir.1961), the attorney retained by the defendant was hospitalized. Instead of granting a continuance so that either the retained attorney could represent the defendant at trial or the defendant could secure counsel of his own choice, the trial judge ordered another attorney to represent the defendant over the defendant's objection. Id. at 299-301. The Ninth Circuit reversed the defendant's conviction because the defendant had been deprived of the assistance of counsel of his own choice
 Similarly, in Gandy v. Alabama, 569 F.2d 1318 (5th Cir.1978), the Fifth Circuit found that the defendant had been denied due process when the state trial court denied a continuance and forced the defendant to go to trial with an attorney other than the one he had retained. In the court's view, "the trial was rendered fundamentally unfair when [the defendant] was effectively denied his right to choose his own counsel." Id. at 1327. See also Linton v. Perini, 656 F.2d 207, 209-11 (6th Cir.1981); United States v. Seale, 461 F.2d 345, 356-61 (7th Cir.1972).
 
 
 [2]
 Wallace also cites to the Guidelines for Resolving Scheduling Conflicts, which have been adopted by the North Carolina federal district courts and by the Fourth Circuit, in support of his contention that the district court should have contacted the state court judge to resolve Floyd's scheduling conflict. While doing so may wisely have avoided the conflict at issue in this case, Wallace fails to cite to the first paragraph of the Guidelines, which states that
 [i]t shall be the duty of counsel, other than solo practitioners, to have another member of the firm reasonably well acquainted with the case to the end that, where practicable, substitution of counsel may be made in order to avoid conflict.
 Clearly, the district court had ample reason to find that Ingram was capable of trying Wallace's case given the record of Ingram's involvement in the case up until the trial.