**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harold OWEN, Defendant–Appellant.**

**No. 02–6891.**

United States Court of Appeals,
Fourth Circuit.

Argued: March 16, 2005.

Decided: May 5, 2005.

**ARGUED:** Cheryl Johns Sturm, Chadds Ford, Pennsylvania, for Appellant. Thomas Richard Ascik, Assistant United States Attorney, Office of the United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Gretchen C.F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge LUTTTIG wrote the opinion, in which Judge WILLIAMS joined. Judge GREGORY wrote an opinion concurring in part and dissenting in part.

## OPINION

LUTTIG, Circuit Judge:

Defendant-appellant Harold Owen challenges the district court's dismissal of his section 2255 motion, which alleged that he was denied the assistance of counsel at his federal arraignment in violation of the Sixth Amendment. Because we conclude that Owen validly waived his right to counsel at the arraignment, and because he suffered no prejudice from his lack of counsel in any event, we affirm the judgment of the district court.

## I.

Owen was indicted for drug offenses in late 1990. He attended his initial appearance without counsel before a magistrate judge on January 23, 1991. S.J.A. 3. There, he was advised of the charges against him and of his right to counsel. S.J.A. 3. He alleged that he was financially unable to employ counsel and requested court-appointed counsel, but he executed a financial affidavit that estimated his net worth at $146,900 (mostly in real property) with a monthly income of $2200. 2d S.J.A. 6. The court found him ineligible for court-appointed counsel, but granted him temporary counsel for his imminent detention hearing. 2d S.J.A. 6–7.

On February 4 and February 14, Owen was mailed notice of a hearing for arraignment and for status of counsel. S.J.A. 3. This hearing was held on February 21 before the district judge, and Owen appeared without counsel. J.A. 412–23. The district judge confirmed that Owen had been instructed that he was financially ineligible for a court-appointed attorney, and told him that "given the value of your property there's no way the tax payers can be asked to foot the bill for your defense," to which Owen replied, "I understand and appreciate that." J.A. 415–17, 419–20. The district judge proceeded to arraign Owen, who pleaded not guilty and requested a jury trial. J.A. 420.

Subsequently, the magistrate judge held two status-of-counsel hearings on March 15 and March 25, at which Owen claimed that he was still seeking unsuccessfully to hire counsel and insisted that he should be eligible for a court-appointed attorney. 2d S.J.A. 7. At the second hearing, Owen contended that "his financial condition was not as he had initially reported." 2d S.J.A.

7. The magistrate judge permitted him to execute a second financial affidavit, which estimated Owen's net worth at $54,200 with a monthly income of $2278.* 2d S.J.A. 7–8. On that basis, the judge found that Owen was "not financially unable to employ counsel." 2d S.J.A. 8. The magistrate judge nevertheless appointed counsel for Owen, but he required Owen to reimburse the government for the costs. 2d S.J.A. 8. Owen's counsel was appointed effective April 9. S.J.A. 4.

At the arraignment on February 21, the district judge had entered a pre-trial order requiring all pre-trial motions to be filed within fifteen days. 2d S.J.A. 18. Prior to appointment of counsel, Owen filed a pro se motion for discovery on March 8 and a pro se motion for a speedy trial on March 22. S.J.A. 3–4. The magistrate judge ruled on the motion for discovery with a standard discovery order on March 25. J.A. 445–57.

Once appointed, Owen's counsel also filed motions, including a motion for a continuance on April 26, which the district court granted on April 29; and a motion to dismiss on April 26, which the district court denied on April 29. S.J.A. 4. The district judge denied Owen's motion to dismiss as untimely in light of the fifteen-day deadline for motions in the February 21 pre-trial order, but he considered the merits of the motion in full and made his decision not to excuse its untimeliness in light of his conclusion that it was also legally meritless. 2d S.J.A. 19–21.

Represented by counsel, Owen was tried and convicted on multiple counts on July 23–31. S.J.A. 4–6. His conviction and sentence were upheld on direct appeal. *United States v. Owen*, 966 F.2d 1445 (4th Cir.1992) (table). In 1997, he

---

* A presentence report prepared after Owen's conviction calculated his actual net worth at $81,300 and his monthly income at $2278. J.A. 345.

filed a section 2255 motion in the district court, alleging *inter alia* that he was unconstitutionally deprived of counsel at his arraignment. J.A. 72. The district court denied his motion, holding that Owen waived his right to counsel at arraignment and that Owen was not prejudiced by lack of counsel in any event. J.A. 376–80. Owen timely appealed. We granted a certificate of appealability only on the issue of Owen's arraignment without counsel.

## II.

As an initial matter, the government does not dispute that Owen was entitled to counsel at his federal arraignment, and so we assume without deciding that Owen's federal arraignment was a "critical stage" of the criminal proceedings against him, such that his Sixth Amendment right to counsel was applicable. *See United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding that the Sixth Amendment right to counsel attaches at "critical stages" of criminal process in which "potential substantial prejudice to defendant's rights inheres"); *United States v. Davis*, 958 F.2d 47, 48 (4th Cir.1992) (assuming without deciding that federal arraignment is a critical stage implicating the right to counsel).

■ Assuming that the right to counsel attached, then, we address first the issue of whether Owen waived his right to counsel at his February 21 arraignment hearing. Determination of a waiver of the right to counsel is a question of law, which we review de novo. *United States v. Singleton*, 107 F.3d 1091, 1097 n. 3 (4th Cir. 1997).

■ The district court's determination that Owen waived his right to counsel at arraignment was correct. We have held that, when a defendant who is advised of his right to counsel has failed to show that he cannot afford counsel, he impliedly waives his right to counsel by not procuring such from his own resources in a timely fashion. *See United States v. Kaufman*, 452 F.2d 1202, 1202 (4th Cir.1971) (rejecting the defendant's claim that he was impermissibly tried without counsel when he had not submitted financial affidavits establishing his inability to pay and there was "no evidence in the record that Kaufman lacked sufficient funds to retain an attorney to represent him"); *Davis*, 958 F.2d at 49 ("Having failed to establish ... that he was ever entitled to court appointed counsel, Davis cannot complain that he was arraigned without counsel."). Moreover, the Sixth Amendment guarantees to a defendant with financial means only "a *fair opportunity* to secure counsel of his own choice"—not an indefinite series of continuances during which to conduct a leisurely search for counsel on his own schedule. *Sampley v. Att'y Gen.*, 786 F.2d 610, 612 (4th Cir.1986) (emphasis added); *see also United States v. Wright*, 797 F.2d 171, 174 (4th Cir.1986) ("A defendant may be required to go to trial without an attorney when he has had a fair opportunity to obtain counsel and does not do so.").

Here, Owen was advised of his right to counsel and his ineligibility for court-appointed counsel at his initial appearance on January 23, and he was arraigned on February 21. He thus had twenty-nine days in which to employ counsel prior to his arraignment. Plainly, this constituted a "fair opportunity" to employ counsel. *See Sampley*, 786 F.2d at 615 (two two-week continuances between withdrawal of counsel and trial constituted a "fair opportunity" to secure new counsel); *see also Davis*, 958 F.2d at 47–48 (upholding the defendant's arraignment without counsel when only nine days had passed between the defendant's initial appearance, where he was instructed of his right to counsel,

and his arraignment without counsel). Moreover, there were no exceptional circumstances inhibiting Owen's search for counsel, *cf. Sampley,* 786 F.2d at 615 (defendant alleged that the political nature of his case made it impossible to find willing counsel); on the contrary, the arraignment transcript showed that Owen's failure to obtain counsel was due to his decision to contact only a single attorney who charged an unreasonably high retainer, despite the opportunity to contact other attorneys during those twenty-nine days. *See J.A.* 415–16.

■ Owen contends that he was in fact financially unable to secure counsel for himself, relying on the fact that the magistrate judge eventually did provide him with court-appointed counsel. But, in doing so, the magistrate judge explicitly found that Owen was *not* financially unable to employ counsel, and required Owen to reimburse the court for counsel's costs. 2d S.J.A. 8. In light of Owen's affidavits estimating his net worth at $146,000 and $52,000, and the later pre-sentence report placing his net worth at $82,000, it is evident that the magistrate judge did not clearly err in either of his successive determinations that Owen could afford to employ counsel on his own. And even if Owen could now show that he was in fact unable to pay for counsel, contrary to his own affidavits executed at the time, he bore the burden of proving his eligibility for appointed counsel; thus, the district court was entitled to rely on his affidavits in its determination of his eligibility. *See Davis,* 958 F.2d at 48–49 ("To qualify for court appointed counsel, however, the defendant bears the burden of proving that he lacks *financial means* to retain counsel.... By blocking legitimate inquiry into his financial condition, a defendant impliedly waives his right to counsel."). Therefore, Owen effectively waived any right to counsel at his arraignment, and he cannot now complain of a constitutional violation.

### III.

■ Even if Owen had not waived his right to counsel at the arraignment, he would not be entitled to relief because his arraignment without counsel was harmless error, as the district court correctly concluded. We review de novo the district court's determination that the lack of counsel did not prejudice Owen. *Barnes v. Thompson,* 58 F.3d 971, 987 (4th Cir.1995).

■ Assuming, again without deciding, that the arraignment is a critical stage of federal criminal proceedings involving "potential substantial prejudice to defendant's rights" in the absence of counsel, we must decide whether the absence of counsel at such is subject to harmless-error analysis. We have held that harmless-error analysis applies to the denial of the Sixth Amendment right to counsel at all stages of the criminal process, except for those where such denial "affects and contaminates" the entire subsequent proceeding: "[o]nly in cases where the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding is reversal automatic." *Arnold v. Evatt,* 113 F.3d 1352, 1361 (4th Cir.1997) (internal quotation marks omitted) (quoting *Satterwhite v. Texas,* 486 U.S. 249, 258, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)); *see also Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J.) (holding that harmless-error analysis is inapplicable only to "structural defects in the constitution of the trial mechanism," which affect "[t]he entire conduct of trial from beginning to end"). In particular, with respect to arraignments, the Supreme Court has held that the denial of counsel at an arraignment required automatic reversal, without any harmless-

error analysis, in two situations: when defenses not pleaded at arraignment were irretrievably lost, *Hamilton v. Alabama*, 368 U.S. 52, 53–54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); and when a full admission of guilt entered at an arraignment without counsel was later used against the defendant at trial, despite its subsequent withdrawal, *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (per curiam). As the Supreme Court has noted with respect to *Hamilton* and *White*, the denial of counsel under such circumstances "cast[s] so much doubt on the fairness of the trial process that, as a matter of law, [it] can never be considered harmless." *Satterwhite*, 486 U.S. at 256, 108 S.Ct. 1792.

Here, by contrast, Owen's arraignment without counsel involved no such "structural defect" or "contamination" of the entire trial process. At arraignment, Owen merely entered a plea of not guilty and asserted his right to a jury trial. Unlike the defendants in *Hamilton* and *White*, he did not irrevocably waive any defenses or make any irreversible admissions of guilt, nor was he presented with the opportunity to execute any such irrevocable waiver or irreversible admission. On the contrary, Owen preserved every right that he possessed pre-arraignment. He left open the possibility of withdrawing his not-guilty plea; in fact, at arraignment, the government indicated its willingness to engage in plea negotiations with him. J.A. 420–21. In such circumstances, where the arraignment involved no necessary or inevitable impact on the subsequent criminal proceedings, the denial of counsel at arraignment was not "structural error" and is subject to harmless-error analysis.

Our conclusion that Owen's arraignment without counsel is subject to harmless-error analysis is abundantly supported by Supreme Court cases applying harmless-error analysis to the denial of the Sixth Amendment right to counsel at various "critical stages" of criminal process. For example, in *Coleman v. Alabama*, the Supreme Court held that an Alabama preliminary hearing was a "critical stage" at which the right to counsel applied, and also held that "[t]he test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*." *Coleman v. Alabama*, 399 U.S. 1, 11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Likewise, in *United States v. Wade*, the case in which the Supreme Court defined the governing test for determining whether a proceeding is a "critical stage" at which the right to counsel applies, the Court remanded for a determination of whether the error in question was harmless. *See Wade*, 388 U.S. at 239–40, 87 S.Ct. 1926. And on subsequent occasions, the Court has held that the denial of counsel at various other "critical stages" implicating the Sixth Amendment was subject to harmless-error analysis. *See, e.g.,* *Satterwhite*, 486 U.S. at 258, 108 S.Ct. 1792 (admission of psychiatric examinations conducted in violation of the Sixth Amendment); *Moore v. Illinois*, 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (denial of counsel at a pre-indictment hearing involving eyewitness identification); *Fulminante*, 499 U.S. at 310–11, 111 S.Ct. 1246 (admission of a confession elicited in violation of the Sixth Amendment); *Milton v. Wainwright*, 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (same); *see also Sullivan v. Louisiana*, 508 U.S. 275, 282–83, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (Rehnquist, C.J., concurring) ("We of course have long since rejected the argument that, as a general matter, the Sixth Amendment prohibits the application of harmless-error analysis in determining whether constitutional error had a prejudicial impact on the outcome of a case.").

In the same vein, we too have held that the list of "critical stages" at which the right to counsel attaches, but at which the denial of counsel does not entail automatic reversal, includes unsupervised and supervised juror visits to the crime scene. *See Arnold,* 113 F.3d at 1361; *Sherman v. Smith,* 89 F.3d 1134, 1137 (4th Cir.1996) (en banc). As in all of these cases, the error of which Owen complains did not cast systematic doubt on the subsequent proceedings and did not "affect and contaminate" the entire trial by placing Owen at any ineradicable unfair disadvantage. Accordingly, under both Supreme Court and circuit authority, any error here is subject to review for harmlessness.

Nevertheless, contrary to this extensive authority, Owen contends that denial of counsel at *any* "critical stage" of the trial process requires automatic reversal. He relies principally on dicta from three Supreme Court opinions suggesting that the denial of counsel at a "critical stage" is not subject to harmless-error analysis. *See Bell v. Cone,* 535 U.S. 685, 695–96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Roe v. Flores–Ortega,* 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *United States v. Cronic,* 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). For example, in *Bell v. Cone,* the Supreme Court remarked:

> A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," a phrase we used in *Hamilton v. Alabama* and *White v. Maryland* to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused.

*Bell,* 535 U.S. at 695–96, 122 S.Ct. 1843; *see also Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. 2039 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." (citing *Hamilton* and *White*)). However, these statements do not avail Owen's argument, because they rely on the Supreme Court's *earlier* usage of the phrase "critical stage," in cases such as *Hamilton* and *White,* to refer narrowly to those proceedings *both* at which the Sixth Amendment right to counsel attaches *and* at which denial of counsel necessarily undermines the reliability of the entire criminal proceeding. *See, e.g., Hamilton,* 368 U.S. at 53, 82 S.Ct. 157 (holding that Alabama arraignment was a "critical stage" because "[i]t is there that the defense of insanity [and other pleas and motions] must be pleaded, or the opportunity is lost"). As indicated above, the Supreme Court has subsequently used the phrase "critical stage," in cases such as *Wade* and *Coleman,* in a broader sense, to refer to *all* proceedings at which the Sixth Amendment right to counsel attaches—*including* those at which the denial of such is admittedly subject to harmless-error analysis. Our unchallenged assumption in this case, namely that Owen's federal arraignment was a "critical stage" within the meaning of *Wade,* thus does *not* commit us to the conclusion that the denial of counsel herein requires automatic reversal. Here, the government has *not* conceded that harmless-error analysis is inapplicable; on the contrary, the government contends that any error at Owen's arraignment was evidently harmless. *See* Br. of Appellee at 11–14. We assume that the right to counsel applied at Owen's arraignment because the government does not dispute that assumption. But we do not assume that his lack of counsel was structural error—i.e., that his arraignment was a "critical stage" within the *narrow* meaning of *Hamilton* and *Cronic*—because, under our governing law, the error Owen alleges can and must

be subject to harmless-error analysis. *See Satterwhite*, 486 U.S. at 256, 108 S.Ct. 1792 (holding that only those "Sixth Amendment violations *that pervade the entire proceeding*" can "never be considered harmless" (emphasis added)).

■ Thus, we must determine whether the denial of counsel at arraignment inflicted any prejudice on Owen. In the context of a section 2255 motion alleging constitutional error, such as Owen's, the Fourth Circuit has not decided whether the harmless-beyond-a-reasonable-doubt standard· of *Chapman* applies, as it would on direct appeal, *see Coleman*, 399 U.S. at 11, 90 S.Ct. 1999 ("The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*."), or whether the less stringent test of *Brecht v. Abrahamson* applies, as it would on review of a section 2254 petition. *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (requiring a section 2254 petitioner alleging constitutional error to show "substantial and injurious effect or influence in determining the jury's verdict"); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir.2003) (adopting the *Brecht* standard for section 2255 motions); *United States v. Montalvo*, 331 F.3d 1052, 1057 (9th Cir.2003) (same); *Peck v. United States*, 106 F.3d 450, 456 (2d Cir.1997) (same).

We need not decide this issue here, however, because Owen is not entitled to relief under either standard. Owen's lack of counsel at his arraignment was plainly harmless beyond a reasonable doubt. As noted above, because Owen pleaded not guilty and requested a jury trial, he did not waive any rights at the arraignment, and he was left free to enter into subsequent plea negotiations if he so desired. J.A. 420–21. And, once appointed, Owen's counsel had over three months to prepare for trial, because the district court granted his motion for a continuance. S.J.A. 4. Owen's sole plausible contention of prejudice is that his counsel's pre-trial motion to dismiss was denied as untimely, because the fifteen-day deadline for pre-trial motions imposed at arraignment had lapsed before counsel was appointed. S.J.A. 4. However, Owen suffered no prejudice from the untimely filing of this motion, because the district court fully examined the merits of the motion and explicitly grounded its decision to deny the motion on its conclusion that the motion was legally meritless. 2d S.J.A. 19 ("In some other context, it might be necessary to relax the 15–day limitation period mandated by the Pretrial Order for a Defendant proceeding *pro se* during the 15–day period in question. Where, as here, Defendant's motion is unfounded as a matter of law ... such relaxation is ill-advised."). Owen has made no other showing that his counsel's ability to file motions or present his case was in any way hampered by his lack of counsel at arraignment. As the government urges, Owen's lack of counsel and the subsequent delay before the appointment of his counsel thus had no discernible influence whatsoever on the proceedings. Therefore, the denial of counsel here was harmless beyond a reasonable doubt, and the district court correctly denied Owen's section 2255 motion on this issue.

## CONCLUSION

The judgment of the district court is affirmed.

*AFFIRMED.*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

Harold Owen did not waive his right to counsel either explicitly or implicitly at his arraignment or at any other point in the proceedings. He repeatedly told the mag-

istrate judge and the district court judge that he wanted an attorney, that he was financially unable to afford an attorney, and he repeatedly declined to sign a waiver of counsel form.[1] I dissent from the majority's conclusion otherwise. However, I agree that the error was harmless and thus concur in that portion of the majority's opinion.

## I.

The magistrate judge, based on Owen's first financial affidavit, found that Owen could afford his own counsel but appointed Owen counsel for the purpose of his detention hearing because Owen had not yet had time to obtain counsel. At Owen's arraignment, the district court judge inquired about Owen's efforts to obtain counsel. After Owen explained that he could not afford the fees of the attorneys that he had contacted, the district court judge expressed doubt as to whether Owen needed such expensive counsel. However, the district court then recognized that Owen had a problem in obtaining counsel because Owen's assets consisted of property that would have to be sold before he would have the funds to pay an attorney's fee up-front. Yet, rather than postpone the arraignment to allow Owen more time to sell his property or appoint counsel for Owen to protect his rights during the arraignment, the district court judge proceeded with the arraignment with Owen unrepresented by counsel.

After the arraignment, Owen submitted a second financial affidavit that showed a difference in his net worth from that set out in his first affidavit. Based on this second affidavit, the magistrate judge concluded that Owen was still financially able to employ counsel. Nevertheless, because of Owen's inability to obtain counsel and because of his persistence in seeking court-appointed counsel, the magistrate judge stated that the court would appoint counsel but require Owen to pay the Government the cost of the appointed counsel in installment payments.

Based on these facts, the majority opinion concludes that Owen waived his right to counsel at his arraignment. I disagree.

The Supreme Court has held that under the Sixth Amendment a criminal defendant must be afforded the right to counsel, including court-appointed counsel if the defendant is financially unable to retain an attorney to defend himself. *Gideon v. Wainwright,* 372 U.S. 335, 341, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This right to the assistance of counsel "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Although a defendant may waive his right to counsel, courts must entertain *every reasonable presumption* against the waiver of this fundamental constitutional right. *United States v. Johnson,* 659 F.2d 415, 417 (4th Cir.1981). Thus, a waiver is only valid if it is knowing, intelligent, and voluntary. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

"The determination of whether there has been an intelligent waiver of the right to

---

1. The Election/Waiver of Counsel form reveals that Owen circled the options on the form which stated:

    I (Want) . . . a lawyer to represent me at my proceedings before the Magistrate; I (Want) . . . a lawyer to represent me in any proceedings that may follow in District Court; I (Want) . . . the court to select and appoint a lawyer to represent me before the Magistrate and/or District Court; I am financially . . . (Unable) to hire a lawyer to represent me before the Magistrate and/or District Court.

    Record on Appeal, Doc. Entry # 2.

counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* "[W]hether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Id.* at 465, 58 S.Ct. 1019. While we have rejected the proposition that the failure of the trial court to conduct a searching or formal inquiry into the defendant's understanding of his situation and his awareness of the dangers of self-representation is error, we have held that an "open court exploration of the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation," is necessary. *United States v. Singleton*, 107 F.3d 1091, 1097–98 (4th Cir.1997).

At Owen's arraignment, the district court judge failed to conduct *any* inquiry into Owen's background capabilities and understanding of the dangers and disadvantages of self-representation. The district court judge simply inquired about Owen's status in obtaining counsel, told him that his assets would prevent court-appointed counsel, and then proceeded with the arraignment. Certainly, no formal or searching inquiry was needed, but *some* sort of inquiry was necessary before proceeding with the arraignment with Owen unrepresented.[2] Without this inquiry, the district court judge had no reasonable basis on which to conclude that Owen was knowingly, intelligently, and voluntarily waiving his right to counsel.

The majority finds that because Owen had a "fair opportunity" to obtain counsel, his failure to do so constitutes an implicit waiver of his right to counsel at arraignment. To begin with, I must reject the majority's suggestion that although Owen never expressed his desire to proceed *pro se* that he "impliedly" waived his right to counsel. *Ante* at 225–26. While I recognize that the right to counsel is not without limitation, I think it is beyond dispute that any waiver of that right must be based on a knowing and intelligent decision and not "implied."

The majority relies on cases in which we have held that the dilatory conduct of a defendant negates a defendant's claim that he lacked a "fair opportunity" to secure counsel of his choice. *See, e.g., United States v. Davis*, 958 F.2d 47 (4th Cir. 1992); *United States v. Kaufman*, 452 F.2d 1202 (4th Cir.1971). I find these cases inapposite. The limitation that the majority seeks to place on Owen's right to counsel is one that courts impose when a defendant abuses the process and then complains that he has not had a fair opportunity to secure counsel of his choice. Specifically, we have applied it in cases in which defendants sought court-appointed counsel but then refused to give the court the information needed to evaluate a claim of indigency, such as an affidavit as to financial status. *See Davis*, 958 F.2d at 48–49 (defendant refused to answer any meaningful questions concerning his claim of indigence); *Kaufman*, 452 F.2d at 1202 (defendant refused to execute an affidavit of financial status to establish his indigency).

Owen did not abuse the process by refusing to give the court information about his financial status or otherwise engage in any dilatory conduct such as refusing to pay for counsel when he had the assets to do so. He disclosed his assets to the court and after being found financially able to

---

**2.** Given Owen's continued reiteration of his need for an attorney, it appears that he was fully aware of the dangers of self-representation. So aware, in fact, that he repeatedly refused to sign a waiver of his right to counsel.

pay for his own counsel, he began to seek counsel. When he was arraigned, he had not yet had the opportunity to sell his property holdings and had not been able to obtain counsel based on his other limited assets. Nothing in the record demonstrates that Owen (who was incarcerated) had deliberately delayed selling his assets so as to receive court-appointed counsel.

In addition, the Criminal Justice Act mandates that representation be provided to any "financially eligible person." 18 U.S.C. § 3006A (2000). The term "financially eligible person" does not equate to "indigency," and a defendant's ability to pay must be evaluated in light of the liquidity of the defendant's assets, his personal and familial needs, and any changes in his financial circumstances. *See Museitef v. United States*, 131 F.3d 714, 716 (8th Cir.1997); *United States v. Kelly*, 467 F.2d 262, 266 (7th Cir.1972). We have held that "if there is any question about the defendant's financial status, he should be clearly advised that he has the right to counsel at the government's immediate expense and that any obligation to repay is conditional on his becoming able to do so." *Johnson*, 659 F.2d at 418 (citing *Townes v. United States*, 371 F.2d 930, 933 (4th Cir.1966)). Indeed, as the Eighth Circuit has recognized:

> A criminal defendant who can afford to contribute some amount to the expense of his defense but who cannot afford to hire counsel because his own resources are inadequate either to pay a retainer or to assure private counsel of full payment is functionally akin to an indigent defendant and equally entitled to court-appointed counsel.

*Hanson v. Passer*, 13 F.3d 275, 278 (8th Cir.1994).

It is clear that the proper course of action under these circumstances was for the district court to appoint counsel for Owen at the time of his arraignment and then require him to repay the court the expenses of his court-appointed counsel once he became financially able to do so. While this is what the magistrate judge ultimately did, it came too late to prevent Owen appearing unrepresented at a critical stage of the criminal proceedings against him. Accordingly, I would find that no knowing, intelligent, or voluntary waiver occurred and that Owen was thus denied his right to counsel.

## II.

Though I conclude that Owen was denied his right to counsel at a critical stage in his criminal proceedings, I agree with the majority's finding that the error was harmless and thus concur in that portion of its opinion.[3]

---

3. Indeed, Judge Luttig's opinion on this issue offers an insightful analysis on seemingly conflicting case law and in the process does much to clarify when courts should apply the harmless error standard of review in cases in which a Sixth Amendment violation has occurred.