# IN THE COURT OF APPEALS OF IOWA

No. 22-1454
Filed February 7, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JUSTIN LEE BORCHERS,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Plymouth County, Jeffrey L. Poulson (arraignment), Jeffrey A. Neary (status conference), and Patrick H. Tott (pretrial motions and trial), Judges.

    The defendant appeals convictions for introducing controlled substances into a jail and possession of controlled substances. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

    Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

    Heard by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

"Do you have anything on you that should not go into the jail?"  The arresting officer posed that question to Justin Borchers before ushering him into the squad car.  Borchers said no.  And, indeed, he did not have any contraband on his person.  But Borchers did have methamphetamine and marijuana in his backpack.  Jailers found it during the booking process.  Borchers now challenges his resulting convictions for possession of controlled substances and for introducing controlled substances into the jail facility.  He contends the State offered insufficient evidence that he knowingly introduced the substances into the facility after police seized his backpack.  He also raises four other claims: (1) his waiver of counsel was not knowing, voluntary, and intelligent; (2) the court should have granted his motion to suppress; (3) the court should have ordered a competency evaluation; and (4) the court should have found him incompetent to represent himself.

Because law enforcement—not Borchers—brought the backpack into the jail facility, we find insufficient evidence to support his knowing introduction of the controlled substances.  So we reverse and remand for dismissal of those charges.  But finding no merit in his other four claims, we affirm his convictions for possession of controlled substances.

**I.  Facts and Prior Proceedings**

March 31, 2022, was a rough day for Justin Borchers.  Three times that day he came to the attention of law enforcement.  One, Borchers caused a disturbance at the Kwik Star convenience store; staff called police, who asked him to leave.  Two, a homeowner called police when he noticed Borchers trying to charge his cellphone at an outlet on the home's exterior.  Le Mars police officer Jeff Kramer

responded and told Borchers to stay off other people's property. Three, Borchers returned to the Kwik Star and renewed the quarrel. Employees again contacted law enforcement, but Borchers did not stick around. To help find him, employees described Borchers to Plymouth County Sheriff's Deputy Pat Heissel.

Deputy Heissel found Borchers at a park shelter and informed him that he was under arrest for trespassing at the convenience store. Heissel patted down Borchers, handcuffed him, and put him in the back of the patrol car. As he did so, Heissel asked if there was "anything on" Borchers that should not be taken into the jail. Borchers answered "no, he did not." Borchers had a blue backpack with him at the shelter. It was transported to the jail.[1] And when Borchers was taken from the patrol car in handcuffs, jailer Dalton Vogel recalled that Deputy Heissel had "all of [Borchers's] property that was along with him . . . there was a blue bag and there was some other things that were along with him."

Jailer Vogel recalled that Borchers was wearing several layers of clothing, which he took off as part of the booking process and replaced with a jail uniform. After a thorough search of Borchers's person, Vogel and Deputy Heissel inventoried the blue backpack. Inside, they found substances in a zippered pouch that turned out to be marijuana and methamphetamine.

---

[1] Although the deputy recorded body camera footage of the arrest, the only evidence submitted at trial were two still photographs from the video. The jury did not have evidence of what questions Heissel asked beyond his testimony. The first still photo submitted at trial shows Borchers standing in the shelter where he was arrested, the backpack on a table nearby. The second photo shows Borchers at the jail facility. The backpack is on the counter behind Borchers as the officers search his clothing. The State presented no evidence at trial that placed the backpack in Borchers's actual or constructive possession after his arrest.

Stemming from that find, the State charged Borchers with two counts of possession, one for marijuana and one for methamphetamine, serious misdemeanors, in violation of Iowa Code section 124.401(5) (2022). It also charged him with two counts of knowingly introducing contraband into a jail facility, class "D" felonies, in violation of Iowa Code section 719.7,[2] as a habitual offender.

Before his arraignment, Borchers filed several motions without the assistance of counsel. He asserted that he did not trespass so the charges should be dismissed and that he was not read his *Miranda* rights.[3] At the arraignment, Borchers asked to represent himself and declined to enter a plea until his motions were decided. The court entered a plea of "not guilty" on his behalf and briefly discussed with Borchers whether he would continue to represent himself. The court encouraged Borchers to submit a financial affidavit for appointed counsel.

After the arraignment, Borchers filed his affidavit, and the court appointed attorney Tim Kramer. But within days, Kramer moved to withdraw. He recounted his contact with Borchers at the jail: "While attempting to identify myself and explain the purpose of my call, [Borchers] interrupted me and informed me that I could not legally represent him. He then hung up the phone." That same day, the court held a pretrial conference, but Borchers refused to be transported from the jail to attend. The court granted Kramer's request for withdrawal. The order stated, "Defendant is currently defending himself pro se and not by an attorney. As such he is solely responsible for his defense."

---

[2] "A person commits the offense of possessing contraband if the person, not authorized by law, does any of the following: a. Knowingly introduces contraband into, or onto, the grounds of a . . . jail, . . . ." Iowa Code § 719.7(3)(a).
[3] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

Two weeks later, Borchers appeared for a status hearing. The court entered this written order: "[T]he Defendant wishes to represent himself but a complete waiver of counsel was not completed as the Defendant indicated that he may want counsel but only after his motions are heard and ruled upon." The court appointed Robert Brock as standby counsel and set for hearing what it viewed as Borchers's motions to dismiss the charges and to suppress his statements to police.

Borchers appeared for the hearing by video link from jail. At the start, the court confirmed that Borchers intended to represent himself with standby counsel. The State presented evidence from Officer Kramer. But when Borchers's turn came, the jailer told the court that Borchers did not wish to participate. Ruling from the bench, the court noted that Borchers was not charged with trespass and his motion did not have "any merit as far as the pending felony matters," so it denied the motion to dismiss. The court also denied the motion to suppress. It ruled that Borchers did not face custodial interrogation and did not make incriminating statements. In the court's view, the deputy's questions were administrative as Borchers was being booked into jail. The court set the jury trial for ten days later.

The morning of trial, standby counsel Brock informed the court that Borchers refused to attend. In response, the court decided to go "where Mr. Borchers [was] located to have a conversation with him on the record." Standing in the doorway of his jail cell, the court asked whether Borchers wished to waive counsel for trial. The court also advised Borchers of his right to a speedy trial and his right to be present and tried to secure Borchers's agreement to attend the trial—

either in person or by videoconference. Borchers wouldn't respond to the judge. Borchers also refused to speak to attorney Brock.

After this jail visit, the court determined that Borchers voluntarily waived his presence at trial. Back in the courtroom, the court announced,

> [T]he defendant failed to provide the court with any information upon which the court could make a knowing and voluntary finding that he had waived counsel even though he had previously expressed a desire to represent himself. Without such information, the court's not been able to make such a finding.

The court then elevated Brock to full counsel. The court instructed Brock to try talking to his client again after jury selection. Brock opposed proceeding with the felony trial without his client present. But the court chose to proceed, reiterating that Borchers's absence was voluntary. Brock represented Borchers at the trial, and Borchers refused Brock's further attempts to communicate.

The jury convicted Borchers as charged.[4] The court ordered a presentence-investigation (PSI) report. But Borchers refused to speak with the investigator. So the court deemed the PSI waived and sentenced Borchers to thirty days for each possession count and fifteen years for each count of introducing contraband into the jail. The court ran the sentences concurrently.

Borchers appealed, and we granted oral argument.

## II. Scope and Standards of Review

We review Borchers's claim of insufficient evidence for correction of errors at law. *See State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). His remaining

---

[4] The jury also found that the State proved the habitual offender enhancement. A few weeks after trial, Borchers again applied for appointed counsel. Because the court already appointed Brock, it denied the new application.

claims are constitutional, so we review them de novo.  *Burnett v. Smith*, 990 N.W.2d 289, 293 (Iowa 2023).

### III.  Analysis

#### A.  Did the State present substantial evidence that Borchers knowingly introduced contraband into a jail facility?

Borchers contends there was insufficient proof that he knowingly introduced contraband[5] onto the premises of the Plymouth County jail.[6]  *See* Iowa Code § 719.7(3)(a).  We consider whether substantial evidence supports the verdicts, viewing the evidence in the light most favorable to the State.  *See Crawford*, 974 N.W.2d at 516.  Evidence is substantial if it would convince a rational trier of fact that Borchers is guilty beyond a reasonable doubt.  *See id.*

In moving for judgment of acquittal, defense counsel contested the State's evidence that Borchers knowingly introduced the contraband into the jail:

> [A]t the time that the alleged substances were brought into the jail facility the defendant had already been placed under arrest and was essentially under compulsion that all his belongings accompany him to the jail and anything found in those belongings he basically had

---

[5] Contraband includes controlled substances.  Iowa Code § 719.7(1)(a).  Borchers does not dispute that the substances were methamphetamine and marijuana.

[6] Although the statute refers to "grounds," the jury instruction used the word "premises" when marshaling the offenses under section 719.7(3)(a).  Case law provides that a sally port is part of the jail for some purposes but not for others. *Compare State v. Sanders*, No. 19-0342, 2020 WL 1548505, at *2 (Iowa Ct. App. Apr. 1, 2020) (finding sally port was part of the "grounds" of the jail facility under section 719.7(3)(a) for sufficiency-of-the-evidence purposes), *with State v. Davis*, 922 N.W.2d 326, 332 (Iowa 2019) (finding sally port was not a "place of detention" under section 804.20 where a person must be permitted to make a phone call to family or to secure an attorney).  Witnesses testified that the sally port at the Plymouth County jail was a secured area, consistent with the *Sanders* understanding of "grounds."  *See* 2020 WL 1548505, at *2.  So a jury could reasonably infer that the contraband was "introduced" as soon as Deputy Heissel entered the sally port in his patrol car.  But whether the introduction happened in the sally port or when Heissel handed the property to jailer Vogel, Borchers did not possess his backpack.

no choice or volition or ability to formulate an intent to bring those with him and thereby introduce them into the facility.

The prosecutor resisted, citing the deputy's question about contraband posed to Borchers. That question was "really proactive notice by the sheriff's department" giving Borchers "the opportunity" to turn the drugs over to law enforcement. But when Borchers denied having contraband, according to the prosecutor, he showed that his intent was "not turn it over to the sheriff" but "to continue to possess it" despite being handcuffed and told he was going to jail.

Both sides shift their focus a bit on appeal. Borchers concentrates on the statute's language, noting the legislature did not define "introduces" in chapter 719. When the legislature does not define a term, courts look to other sources, including dictionaries and common usage. *Carreras v. Iowa Dep't of Transp., Motor Vehicle Div.*, 977 N.W.2d 438, 446 (Iowa 2022). So Borchers quotes several dictionaries defining the word "introduce" as inserting something or bringing something inside. *See, e.g.*, *Introduce*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/introduce (defining verb as "to lead or bring in especially for the first time" and to "place, insert"). Borchers contends: "The plain language requires that the *defendant knowingly introduce* the controlled substance, not that he *cause* the substance to be introduced into the facility."

The State does not propose an alternative definition of "introduce." Instead, it maintains that introducing contraband does not require possession. It cites *State v. Caquelin*, where the defendant asked the sentencing court to merge his convictions for possession of a controlled substance and for introducing a controlled substance into a facility. 702 N.W.2d 510, 510 (Iowa Ct. App. 2005).

Caquelin argued "a person cannot introduce a controlled substance into a detention facility without exerting dominion and control over the contraband." *Id.* at 511. The court rejected that argument, finding possession is unnecessary because the introduction offense "encompasses situations where a person mails contraband into a prison or relies on someone else to transport the contraband into the facility." *Id.* at 511–12. Borchers agrees that possession is not an element of the introducing offense. But he points out that neither of the alternate scenarios mentioned in *Caquelin* matches his situation.[7]

As for the deputy's question to Borchers about possession, the State pivoted somewhat at oral argument, asserting that Borchers would be guilty of introduction even if Heissel had never asked him to disclose the contraband. In the State's view, Borchers's knowledge that there was contraband in his backpack was enough to support the conviction.

But Borchers's knowledge that the drugs were in his backpack does not prove he knowingly introduced them onto the jail premises. Our case law "defines 'knowledge' as 'a conscious awareness'" of the existence of the essential facts constituting the crime. *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (citation omitted). What were the essential facts here? A backpack with drugs inside came onto the jail premises. Yet the State offered no evidence that Borchers knew the whereabouts of his bag after his arrest. Nor is there evidence he knew about police procedures for handling personal effects after an arrest. The deputy

---

[7] If he had relied on a third party to bring in contraband, Borchers argues that he would have been guilty as an aider and abettor, but not as a principal. The State did not pursue a theory of aiding and abetting at trial.

told him he was going to jail but was only concerned with what was on his person.[8] It was not enough that Borchers could speculate about what would happen to the contents of his backpack after it was seized by the deputy. It was the deputy who controlled and transported the bag. So even if Borchers knew the drugs were in the bag, there isn't substantial evidence to show he knowingly introduced the bag onto jail premises.

Even taking the evidence in the light most favorable to the State and making all reasonable inferences, there is insufficient evidence in the record for a reasonable jury to conclude that Borchers knowingly introduced contraband onto the jail premises. We reverse those two felony convictions and remand for dismissal.

**B. Should the district court have suppressed Borchers's statements?**

Borchers next contends the district court erred by denying his request to suppress his statements to the deputy based on the lack of *Miranda* warnings. "Law enforcement officers are required to give *Miranda* warnings to individuals who are both in custody and subject to interrogation." *State v. Park*, 985 N.W.2d 154, 168 (Iowa 2023). Custody means either a formal arrest or restraint on freedom of movement to a degree associated with a formal arrest. *Id.* Interrogation is "express questioning, but also . . . any words or actions . . . that the police should

---

[8] In ordinary language, we refer to an individual's "person" as their physical body. *See Person*, Black's Law Dictionary (11th Ed. 2019) ("The living body of a human being <contraband found on the smuggler's person>."). The evidence does not show that Heissel or anyone else asked Borchers what was in his bag before bringing it to the jail. So there isn't evidence to find Borchers failed to disclose the contraband when asked, as the prosecutor asserted at trial.

know are reasonably likely to elicit an incriminating response from the suspect." *State v. Peterson*, 663 N.W.2d 417, 423 (Iowa 2003) (citation omitted).

When assessing an alleged *Miranda* violation, "[w]e make an independent evaluation of the totality of the circumstances as shown by the entire record, considering both the evidence introduced at the suppression hearing as well as the evidence introduced at trial." *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015) (quotation marks and citation omitted). We give deference to the district court's findings of fact, but we are not bound by them. *See State v. Palmer*, 791 N.W.2d 840, 844 (Iowa 2010). "When the alleged error concerns the erroneous admission of evidence in violation of a defendant's constitutional rights, such error is typically subject to harmless-error analysis." *Tyler*, 867 N.W.2d at 153.

In his motion filed without counsel, Borchers alleged that Heissel asked if he had any contraband after arresting him but before giving *Miranda* warnings. At the motion hearing, the prosecutor conceded that Borchers was in custody but argued that the inquiry was "administrative" in nature. The court found, "no evidence [was] presented that the defendant made any incriminating statements of any type to law enforcement, nor was he engaged in any type of custodial interrogation by law enforcement."

While Borchers raises an interesting claim, our reversal of his convictions for introducing contraband short circuits the need for a full-fledged analysis. We need only assess whether Borchers's answer to the deputy's question influenced his misdemeanor convictions for possession of controlled substances. It did not. So even if Heissel's question were interrogation, the exchange was harmless. *See Tyler*, 867 N.W.2d at 153. The jury heard only that the deputy asked Borchers

whether he had anything on his person that should not go into the jail, to which he said no. The deputy did not ask Borchers about his backpack, where the drugs were discovered. And Borchers does not contest that the drugs were marijuana and methamphetamine, as confirmed by the forensic laboratory testing. *See Peterson*, 663 N.W.2d at 431 (in analyzing harmless error, we identify "what evidence the jury actually considered in reaching its verdict" and "weigh the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone"). Borchers's denial that he had any contraband on his person did not influence the jury's conclusion that the drugs were in the backpack and that he possessed the backpack before his arrest. *Id.* The admission of his statement was harmless.

**C. Was Borchers denied his right to counsel without a knowing, voluntary, and intelligent waiver during a critical stage of the proceedings?**

Next, Borchers contends the district court failed to establish that his decision to represent himself at the pretrial stages of the prosecution was knowing, voluntary, and intelligent. The constitutional right to counsel, once it attaches, remains in effect until it is waived. *See State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997). Defendants also have a constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806, 834 (1975). But before defendants may exercise this option, the court must ensure that they knowingly, voluntarily, and intelligently waive their right to counsel. *Iowa v. Tovar*, 541 U.S. 77, 87–88 (2004). To that end, the district court "must investigate as long and as thoroughly as the circumstances of the case" demand. *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948)).

13

Courts impose "rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting" a waiver of the right to counsel at trial. *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). Fleshing out that rigor, our supreme court has stated:

> [Valid waivers] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Cooley*, 608 N.W.2d at 15 (quoting *Von Moltke*, 332 U.S. at 724). "A waiver is made knowingly when the accused is apprised of the factors delineated above, admonished as to the usefulness of an attorney at that particular proceeding, and made cognizant of the danger in continuing without counsel." *Id.* Less rigorous warnings may be acceptable during pretrial stages. *Tovar*, 541 U.S. at 78.

At his in-person arraignment, Borchers told the court that he planned to represent himself. The court acknowledged his right to do so but encouraged him to reconsider. What the court did not do was to engage Borchers in a colloquy to be sure that he understood "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Cooley*, 608 N.W.2d at 15. Neither did the court engage in that colloquy when it appointed standby counsel nor when Borchers represented himself at the hearing on his pretrial motion.

Still the State contends Borchers was not denied the right to counsel because attorney Brock—elevated from standby to full counsel—represented him

at trial. Borchers counters that he has a right to counsel during all "critical stages" of the proceedings. And, he argues, the hearing on his pretrial motion was a "critical stage" where he represented himself without a valid waiver of counsel.

Sixth Amendment protections extend "to pretrial critical stages that are part of the whole course of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). These stages include "a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.* "Critical stages also can include steps in the proceedings in which the accused is confronted by the procedural system or the prosecutor or both, and where available defenses may be irretrievably lost." *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (internal citation omitted). At oral argument, the State conceded that sometimes a suppression hearing may be a critical stage but argued that it was not one here because Borchers did not have a viable suppression claim.

But we don't need to settle the critical-stage debate. As with the previous issue on suppression, our reversal of the felony convictions reshapes the landscape. Let's assume the hearing on his pretrial motions was a critical stage. And let's assume the court's failure to engage in a full *Faretta* colloquy denied Borchers the right to counsel. We still must ask: did the denial of his right to counsel at the pretrial hearing affect the entire criminal proceeding? Granted, our case law has featured some absolutist declarations on automatic reversal in right-to-counsel appeals. For instance, in *Cooley*, our supreme court stated: "The denial of an attorney during the critical stages of a trial can never be construed as harmless error." 608 N.W.2d at 18 (citing *Penson v. Ohio*, 488 U.S. 75, 88 (1988)). Yet *Penson* did not disturb *Satterwhite v. Texas*, in which the Supreme Court held

that the automatic reversal rule applied only when "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." 486 U.S. 249, 257 (1988). Harmless-error analysis is permitted "where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial." *Id.*; *see State v. Hensley*, 534 N.W.2d 379, 382 (Iowa 1995) (applying harmless-error analysis to admission of evidence in violation of Hensley's Sixth Amendment right to counsel). In that vein, courts have applied a harmless-error analysis to Sixth Amendment violations involving discrete hearings or proceedings. *See United States v. Owen*, 407 F.3d 222, 227 (4th Cir. 2005) (collecting cases); *see also United States v. Brown*, 956 F.3d 522, 526 (8th Cir. 2020) (assuming Brown was denied the right to counsel before and during part of the suppression hearing, that denial did not pervade the entire proceedings).

Following the *Satterwhite-Hensley* line of authority, we apply a harmless-error analysis. The denial of the right to counsel at the pretrial hearing did not pervade the entire criminal proceeding. In fact, the evidence that Borchers challenged in his pretrial motion did not have any bearing on his misdemeanor offenses.[9] On this record, we find no reversible error.

### D. Was Borchers competent to stand trial?

Borchers next contends the district court erred in failing to suspend proceedings and order an evaluation under Iowa Code chapter 812 to determine whether he was competent to stand trial. Because the conviction of an

---

[9] It's true that Borchers argued at the pretrial hearing that he "never should have been charged or arrested for trespassing" so the other charges "would have never happened." But he doesn't pursue that argument on appeal until his reply brief, which is too late. *See State v. Basquin*, 970 N.W.2d 643, 659 n.5 (Iowa 2022).

incompetent person violates due process, we review this contention de novo. *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). We "examine the totality of the circumstances to determine if, at the relevant time, a substantial question of [Borchers's] competency reasonably appeared." *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991). There is a presumption that a defendant is competent to stand trial, and the defendant has the burden to prove incompetence. *State v. Newman*, 970 N.W.2d 866, 871 (Iowa 2022).

When questions arise about a defendant's competency, Iowa Code section 812.3 sets out steps to ensure due process is satisfied. It requires a competency hearing "at any stage of a criminal proceeding" if there are "specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1). Either a defendant or defense counsel can apply for a competency determination, or the court can schedule a competency hearing on its own motion. *See id.*

If a reasonable person would believe there was a substantial question about Borchers's competency, then probable cause existed for a hearing. *See Einfeldt*, 914 N.W.2d at 779. Deciding whether probable cause exists is a legal question; the court's discretion plays no role. *Id.* Factors in determining the need for a competency inquiry include (1) any "irrational behavior, (2) demeanor at trial, and (3) any prior medical opinion on competence to stand trial." *State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982). "[T]he ultimate question of competency facing the judge [is] whether the defendant is prevented from 'appreciating the charge, understanding the proceedings, or assisting effectively in the defense.'" *Einfeldt*,

914 N.W.2d at 791 (Mansfield, J., concurring in part and dissenting in part) (quoting Iowa Code § 812.3(1)). A history of mental illness alone is not enough to trigger a competency hearing. *See id.* at 782 n.3. The presence of mental illness must "give rise to a serious question as to whether the defendant meaningfully understands the charges and is capable of meaningfully assisting in the defense." *Id.* Even if a defendant appears competent at the start of the proceedings, the court must be alert to circumstances suggesting a change in their condition. *See id.* at 783.

Without question, communication with Borchers presented difficulties throughout the proceedings. So much so that the court raised questions about his competence at a status conference. Borchers clashed with the court over his rejection of appointed counsel, the nature of criminal trespass and how it related to his motion to dismiss, whether appointment of counsel was a "breach of confidentiality," and whether the court could lawfully continue proceedings in the matter without ruling on unresolved motions. Frustrated with the impasse, Borchers was ready to leave:

> THE COURT: Am I correct that you're rejecting the plea offers, Mr. Borchers, at this time?
> COURT REPORTER: I didn't hear what you said.
> THE COURT: He said he pleads the fifth, [court reporter]. Well, I will take that as a rejection of the plea agreement at this time.
> THE DEFENDANT: I wouldn't do that. That's a bias opinion. You can't do that, Your Honor. You have to go by the law book.
> THE COURT: This is getting comical, Mr. Borchers.
> THE DEFENDANT: No, I'm being real about it.
> THE COURT: Yeah. [Prosecutor], do you think I should have Mr. Borchers psychologically examined? Do you have any reason to believe that he's operating with his full faculties?
> PROSECUTOR: I'd like time to consider that, Your Honor. I guess if that were—if it were something, I'd like to file such a request in writing rather than do it on the record today.

THE COURT: Sure. And I know the Court can do that on its own. And, Mr. Borchers, I'm not trying to be difficult, but I need to have you at least be able to carry on a conversation with me and understand that—I'm not trying to be difficult. I want your case resolved—

THE DEFENDANT: I have the right to plead the Fifth. My counsel tells me that. I need my counsel right now. And if you can't accept that, Your Honor, and if you can't go by the law, you need to go by the law. You think I need an evaluation. I had one a week before I came in, just to let you know.

THE COURT: You know what, Mr. Borchers, are you afraid that answering my questions is going to place you in jeopardy of committing a crime?

THE DEFENDANT: No, I'm not. I don't have to worry about that.

THE COURT: Then you can't take the Fifth Amendment. You can't rely on your Fifth unless it would tend to incriminate you. No, he's not leaving yet. I'll tell you when it's time, okay? All right. So, Mr. Borchers, do you want to make this difficult?

THE DEFENDANT: (No response.)

THE COURT: Apparently he does. All right. Then, you know, the one thing I can do—and I may do on my own—because the Court can—is to have him psychologically evaluated.

At other points, Borchers refused to participate or even acknowledge the court or his counsel. On the first day of trial, when the court trekked to the jail to speak with Borchers, he interrupted the court's recitation of the charges:

THE DEFENDANT: I don't understand anything you're saying. I'm off my meds.

THE COURT: Count 3, Possession of Marijuana, First Offense.

THE DEFENDANT: Thank you.

THE COURT: All right. So, Mr. Borchers, you're indicating to me you don't believe you're competent to stand trial?

THE DEFENDANT: I didn't say that.

THE COURT: You said you're not on your medication.

THE DEFENDANT: I didn't—

THE COURT: Mr. Borchers, please answer my question.

THE DEFENDANT: I haven't seen a doctor. They're not a doctor –

. . . .

THE COURT: Mr. Borchers, are you on medication for mental-health issues?

THE DEFENDANT: (No response.)

THE COURT: You just indicated to me you're not on your medications. What medications are you not on?

THE DEFENDANT: (No response.)

THE COURT: Mr. Borchers, do you understand these proceedings?

THE DEFENDANT: (No response.)

THE COURT: Mr. Borchers, you're—

THE DEFENDANT: Do I understand this is an illegal proceeding? Yes.

In response, the State called a jailer, who testified Borchers had been in jail more than two months, during which he had not asked for any medication or to see a healthcare provider. The jailer had no concerns about Borchers's behavior, his mental state, or his ability to process information.

Back in the courtroom, the court returned to the competence issue:

The Court will indicate on the record that it had some question or concern dealing with the defendant's competency or lack thereof. However, as [the prosecutor] has indicated, a review of the court file, the filings that Mr. Borchers has made, his participation in prior court hearings, making some legitimate legal arguments, as well as his behavior at the Plymouth County Jail over the last eighty or so days as testified to by jail staff, alleviates any concerns that the Court might have regarding Mr. Borchers's competency, and the Court expressly finds at this time Mr. Borchers is simply making his own independent decision not to be cooperative and not to come to the courthouse for the conduct of this trial.

We acknowledge that Borchers had a history of mental-health concerns. He noted at booking and in his financial affidavit that he was on disability. The booking report also showed that he had a diagnosed mental illness and had attempted suicide. In an earlier booking report, offered for the habitual offender enhancement, he reported a diagnosis of bipolar disorder.

Still, we agree with the district court that there was not a substantial question about Borchers's competency at trial. His diagnosis of mental illness did not mean he could not understand the charges or assist in his defense. According to the

information available, Borchers was not undergoing treatment and was not currently prescribed medication. His recalcitrance in court differed from his conduct in the jail, where he was reportedly placid and cooperative. Granted, Borchers had some misconceptions about the legal process, and his frustration often resulted in his refusal to participate in proceedings. But the record does not show that his defiance stemmed from a mental disorder. Borchers showed a rational—if somewhat misinformed—understanding of the proceedings and the charges against him. Without the help of counsel, he wrote cogent arguments in his pretrial motion. He had a firm grasp of the facts of his arrest. And his demeanor while participating was generally appropriate for a self-represented, lay litigant. Had he accepted counsel, he could have assisted in the defense. Like the district court, we find that Borchers made an independent decision to be uncooperative with the court. His conduct did not raise a substantial question about his competence to stand trial.

### E. Was Borchers competent to represent himself?

And finally, Borchers contends the district court erred in determining he was competent to represent himself. In *Indiana v. Edwards*, the Supreme Court held the Constitution allows states to limit the right of self-representation for defendants who may be competent to stand trial but not competent to conduct trial proceedings. 554 U.S. 164, 172 (2008). For such "gray-area" defendants, the determination of competence depends on their "ability to 'carry out the basic tasks needed to present [their] own defense without the help of counsel.'" *State v. Jason*, 779 N.W.2d 66, 75, 76 n.2 (Iowa Ct. App. 2009) (quoting *State v. Connor*, 973 A.2d 627, 656 (Conn. 2009) (quoting *Edwards*, 554 U.S. at 175–76)). We must consider

how Borchers "conducted the trial proceedings and whether he grasped the issues pertinent to those proceedings, along with his ability to communicate coherently with the court and the jury." *Id.* at 76 n.2. His "technical legal knowledge is not relevant to the determination." *Edwards*, 554 U.S. at 172 (citation omitted). The relevant question is whether his mental illness reduces his capacity to conduct his own defense. *Id.* at 177–78.

As explained in our competency analysis above, the trial record did not show that a mental illness impaired Borchers's capacity to stand trial—or to conduct his own defense at the pretrial hearing. Borchers's "inflated conception" of his own skills did not mean he was incompetent to represent himself. *See State v. McCullah*, No. 12-0081, 2013 WL 530943, at *3 (Iowa Ct. App. Feb. 13, 2013). He presented arguments in writing and advocated his positions orally when he chose to participate. When he did not, it was a voluntary choice.

## IV. Conclusion

To recap, we reverse Borchers's convictions for introducing contraband into a jail facility and remand for dismissal of those two counts. But finding no reversible error on the suppression, denial-of-counsel, or competency claims, we affirm his convictions for drug possession. We also remand for resentencing on those two remaining convictions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**